**Ciro SILVESTRI, Plaintiff-Appellant,**

v.

**ITALIA SOCIETA PER AZIONI DI NAVIGAZIONE, Defendant-Appellee.**

**No. 175, Docket 31489.**

United States Court of Appeals
Second Circuit.

Argued Nov. 15, 1967.
Decided Jan. 4, 1968.

---

Paul C. Matthews, New York City, for plaintiff-appellant.

Michael D. Martocci, New York City (Dorsey, Burke & Griffin, New York City, Morgan J. Burke, New York City, on the brief), for defendant-appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

On June 20, 1966, Ciro Silvestri filed a libel in the District Court for the Southern District of New York to recover damages for an injury sustained on October 9, 1964, as a result of a lurch by the Italian Line's S.S. Leonardo Da Vinci on which he was an eastbound transatlantic passenger. Although process never issued against the ship, it was stipulated that the action should be deemed to be *in rem* as well as *in personam*. The Italian Line moved for summary judgment because of Silvestri's failure to comply with Article 30 of the Terms and Conditions of his ticket which we quote in the margin;[1] an affidavit supporting the motion set forth Silvestri's admissions on deposition that he had the ticket in his possession for at least three days before board-

---

1. "Article 30°—Limitation of Action Against the Company.—No action or proceeding against the Company for death or injury of any kind to the passenger shall be instituted, unless written notice is given to the Company or its duly authorized Agent within six months from the day when the death or injury occurred and the action or suit arising therefrom is commenced within one year from the date when the death or injury occurred. No action or suit against the Company for loss or damage to baggage or for detention of the passenger or delay in landing or any other cause shall be instituted by the passenger unless written notice of the claim with full particulars be delivered to the Company or its duly authorized Agent at the port of debarkation within ten days from the date of landing, and such action or suit is commenced within six months after the termination of the voyage.

"In no case shall such action or suit be instituted after the above expiration of time notwithstanding any provision of law of any state or country to the contrary."

ing the ship in New York and until he arrived in Italy, that he had looked at it prior to embarking, that he had consulted a lawyer in Italy who had made oral representations to the Italian Line without obtaining a satisfactory offer of settlement, and that he had given no written notice until the filing of the libel. Judge Metzner granted the motion, apparently for failure to begin the action within one year, a contractual period of limitation sanctioned by 46 U.S.C. § 183b(a), and hence without having to consider whether Silvestri's failure to give written notice within six months would be ineffective as a bar because of being non-prejudicial in light of the alleged knowledge of the ship's master and the claim by the Italian attorney, 46 U.S.C. § 183b(b) (1). Silvestri's alternative arguments for reversal rest on the applicability of two Supreme Court decisions, The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), and The Monrosa v. Carbon Black Export, Inc., 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959), neither of which has been cited by counsel.

■ We find no merit in Silvestri's contention that even if the conditions were incorporated as the judge held, Article 30 did not cover a suit *in rem*. In *The Monrosa* the Supreme Court held a clause in a bill of lading which we quote in the margin[2] inadequate to bar an *in rem* proceeding in the United States. The decision is fairly distinguishable on several grounds. The Court stressed, 359 U.S. at 182, 79 S.Ct. at 712, that "the initial words"—presumably the reference not merely to the Shipowners but to the Captain and the Agents—"are particularly appropriate to a restriction of the clause to *in personam* actions, and the rest of the language is intelligible on this premise." Here the language is different, and we can discern no intelligible purpose to be served

by provisions for filing claims and starting suits that would apply only to *in personam* actions and leave the claimant free to attach the ship. The Court leaned also on another clause in the bill of lading which had referred both to the carrier and the ship, 359 U.S. at 182 fn.*, 79 S.Ct. at 712; here there are no such clauses, the ticket is studded with provisions referring only to "the Company," and—perhaps decisively— Article 32 recites:

> "All the regulations, limitations and exceptions relating to the responsibility. of the Company are understood to apply also to the responsibilities, if any, of its Agents, *its vessels*, its Masters and crew, its employees and, generally, all persons who act for the Company." (Emphasis supplied.)

Finally, the clause *sub judice* in *The Monrosa* encountered what the Fifth Circuit had characterized as "one of the most universally recognized rules of law," namely, that "which gives the right to libelant, possessing a maritime lien against a vessel, to proceed in rem in the jurisdiction where the vessel is found," 254 F.2d 297, 300 (5 Cir. 1958), quoting Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 467 (5 Cir. 1957), and the Supreme Court also recognized this by its reference to The Maggie Hammond, 76 U.S. (9 Wall.) 435, 449, 450, 19 L.Ed. 772 (1869), which held that liens "will generally, although not universally, be respected and enforced in all places where the property is found or where the right can be beneficially enforced by the lex fori." See also Continental Grain Co. v. FBL-585, 364 U.S. 19, 21–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

Silvestri can prevail, therefore, only if the judge erred in ruling that the conditions were incorporated, decision of which requires us to go back to *The Majestic*. That case stemmed from a

---

2. "27.—ALSO, that no legal proceedings may be brought against the Captain or Shipowners or their Agents in respect of any loss of or damage to any goods herein specified except in Genoa, it being understood and agreed that every other Tribunal in the place or places where the goods were shipped or landed is incompetent, notwithstanding that the ship may be legally represented there."

misadventure of the Misses Potter who, with their maid, had sailed from Liverpool to New York in 1892. Despite the improvements in transatlantic navigation since the memorable voyage exactly four centuries earlier, the estimable young ladies found on disembarking that the contents of their trunks had been badly damaged by sea water. When they libelled the Majestic, they were met, among other defenses, with a ticket provision limiting liability "for loss of or injury to or delay in delivery of luggage" to £10. The ticket contained a "box" bearing the names of the passengers, alongside which was an agreement of carriage signed by the Oceanic Steam Navigation Company. Underneath this was a "Notice to Cabin Passengers" with provisions not relevant to the issue save for a reference "See Back"; on the back, under the rubric "Notice to Passengers," like that on the front in bold face type, was a statement "This contract is made subject to the following conditions," including, in fine type, the limitation of liability for luggage to which we have referred. The attention of the Misses Potter had not been called to this, nor had either of them read it. In a unanimous opinion by Chief Justice Fuller, the Court allowed them to recover free from the limitation. Relying particularly on Richardson, Spence & Co. v. Rowntree, [1894] A.C. 217, and Henderson v. Stevenson, L.R. 2 Sc. & Div.App. 470 (1875), the Court held that the limitations "were not included in the contract proper, in terms or by reference." 166 U.S. at 385, 17 S.Ct. at 602.

In an effort to meet the rule in *The Majestic*, which the Supreme Court has had no further occasion to elucidate, steamship companies have used various expedients to effectuate inclusion in the contract of the all too numerous conditions they appear to consider essential. Here the "box" bore in the upper right hand corner the words:

BIGLIETTO DI PASSAGIO
PASSAGE CONTRACT

followed by an identifying number, and in the lower right hand corner the validating stamp of the issuing travel agent. Almost all of the captions in the "box" were in capital or bold face letters, the major exception being the following statements, which appeared in the upper left hand corner of the ticket in ordinary lower-case one-eighteenth inch type:

> Il presente biglietto di passagio e soggetto alle condizioni stampate sulla copertina e sui fogli n° 1 e 2.
>
> Subject to the conditions printed on the cover of this ticket which form part of this contract.

The inconspicuousness of these statements was increased by the fact that they were squeezed immediately below a caption in bold face and to the left of one in capital letters. The two "leaves" which are an integral part of the coupon retained by the passenger were headed "TERMS AND CONDITIONS" in bold face. Then followed 35 numbered paragraphs in very small print. At the end were spaces for signature by or for the passenger, but neither Silvestri nor any representative signed.

Judicial efforts to determine what suffices to meet the rule of *The Majestic* have produced distinctions of considerable nicety. The early decisions of this court ruled against incorporation. La Bourgogne, 144 F. 781 (2 Cir. 1906); The Minnetonka, 146 F. 509 (2 Cir. 1906); Smith v. North German Lloyd S.S. Co., 151 F. 222 (2 Cir. 1907).[3] A

---

**3.** In *La Bourgogne* the ticket was not in evidence but it was found that the conditions were "printed on the back and that no one representing the petitioner called the attention of the holders of the tickets to the conditions on the back and that there is no proof that the passengers read the conditions." In *The Minnetonka* "The conditions on the back of the con-

tract ticket * * * were printed in agate type, in double columns, and so compactly as to be almost illegible to one whose sight was at all imperfect. The claimant's agent * * * did not call [the libellant's] attention to the endorsements or ask her to read them, and she did not, in fact, read them." The district court opinion, 132 F. 52, 55 (S.D.N.Y.

contrary line of authority finds its main doctrinal source in Murray v. Cunard Steamship Co., 235 N.Y. 162, 139 N.E. 226, 26 A.L.R. 1371 (1923). The Court of Appeals there enforced a 40 day notification requirement despite the fact that the passenger had apparently been required to surrender the ticket on board the ship. Judge Cardozo's opinion stated that "The plaintiff's ticket \* \* \* is described in large type as a 'cabin passage contract ticket.' It provides, again in large type, that 'this contract ticket is issued by the company and accepted by the passenger on the following terms and conditions.' \* \* \* At the top of the ticket is printed a notice 'The attention of passengers is specially directed to the terms and conditions of this contract.' " On these facts, the court held:

> "This is not a case of a mere notice on the back of a ticket, separate either in substance or in form from the body of the contract. The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039. Here the condition is wrought into the tissue, the two inseparably integrated. This ticket, to the most casual observer, is as plainly a contract, burdened with all kinds of conditions, as if it were a bill of lading or a policy of insurance. 'No one who could read could glance at it without seeing that it undertook \* \* \* to prescribe the particulars which should govern the conduct of the parties until the passenger reached the port of destination' Fonseca v. Cunard S.S. Co., 153 Mass. 553, 27 N.E. 665, 12 L.R.A. 340. In such circumstances, the act of acceptance gives rise to an implication of assent." Id. at 166, 139 N.E. at 228.

Despite the eminence of its authorship the Murray opinion did not at first have an enthusiastic reception in this court. Baer v. North German Lloyd, 69 F.2d 88 (2 Cir. 1934), involved a ticket which apparently referred to the conditions only in a heading located below the filled-in section. Pointing out that "These conditions were not referred to at all in the ticket proper which was duly signed in behalf of the defendant and which was the transportation contract binding upon the parties," the court said that Murray was distinguishable since the condition was there "wrought into the tissue." Maibrunn v. Hamburg-American S.S. Co., 77 F.2d 304 (2 Cir. 1935), was a case where "On the face of the ticket, but at one side of the printing and writing which formed the contract proper, so far as there was one, was a legend reading as follows: 'Notice. The attention of passengers is especially directed to the terms and provisions of this contract printed on the reverse side, which must be signed by the passenger and the agent.' " In refusing to enforce a notification provision, Judge L. Hand said that "only the contract proper charges the passenger, and the contract is taken as those words which the carrier in some way authenticates by its own signature; notices and legends alongside are not part of it." A year later he found Bellocchio v. Italia Flotte Riunite, 84 F.2d 975 (2 Cir. 1936), where there was no notice at all on the face, to be an even stronger case in favor of the passenger. However, the Bellocchio opinion contained the first note of dissatisfaction with the whole doctrine, "The distinction is indeed somewhat formal and is not very satisfactory in theory, \* \* \*." Nevertheless in The Kungsholm, 86 F.2d 703 (2 Cir. 1936), where the "printed matter to the right of this 'box' is headed 'Cruise Contract' and states in large type, 'The following stipulations are a part of this contract which must be signed by the passenger

---

1904), adds that "the above conditions were printed, with others, underneath the words 'Notice to Passengers' in large clear type, and that below the conditions were certain blanks to contain information desired by the United States Revenue authorities, which were filled in by the libel-

lant, or her representative." The court in the Smith case was "unable to distinguish this case from The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039, except that the notice is printed on the front, instead of the back, of the ticket."

on the over-page immediately upon its receipt,'" a divided court followed *Maibrunn* in not enforcing a notification requirement, saying that "there is nothing above the carrier's signature to incorporate expressly or by reference any of these stipulations," although conceding this to be "a very formal doctrine."

Baron v. Compagnie Generale Transatlantique, 108 F.2d 21 (2 Cir. 1939), was the first turn in the tide in this court. "The ticket was headed 'Passage Contract. Subject to the Terms Stated on This Page and Overpage.' Then came a blocked space across the page for the name of the steamer, ports, date of sailing, names of passengers, and ocean fares. Beneath the space were the words in prominent red type, 'Passengers should read the terms of the contract of carriage stated below and overpage, their particular attention being called to the limitations of liability therein contained.' This sentence was followed by the heading 'Terms of Contract—Read Before Accepting.'" [4] The court held that "In the present case the form of the ticket shows unmistakably that the numbered paragraphs under the heading 'Terms of Contract' were incorporated textually into the contract of passage." This was because, unlike *The Kungsholm,* "In the present case the signature or authentication appears at the foot of the 'Terms of Contract,' and at no other place. Everything printed on the ticket rebuts the contention that the contract of carriage was restricted to the blocked space for names, dates and fares." While *Baron* itself would not avail the respondent since here the agent's validating stamp was in the box and the passenger never signed in the space provided below the terms and con-

ditions, Foster v. Cunard White Star, 121 F.2d 12 (2 Cir. 1941), substantially abandoned the place of signature distinction by reading the terms and conditions back into the box so that they preceded the signature. This was predicated on "a direct reference in the box on the face of the ticket to the terms and conditions of the contract." [5] Finally, Geller v. Holland-America Line, 201 F.Supp. 508 (S.D.N.Y.), aff'd, 298 F.2d 618 (2 Cir. 1961), sustained a time limitation on a ticket whose "box" contained a conspicuously placed legend "Subject to the TERMS OF PASSAGE CONTRACT printed on the face hereof and continued overleaf, which terms are made a part of this contract," and the terms were headed by a box saying in bold face "NOTICE: The attention of passengers is especially directed to the Terms of Passage Contract, which please read carefully." We held "it is the settled law in this circuit that passengers will be bound by such a provision in the contract of carriage, if the provision is incorporated, at least by reference, in the body of the contract." 298 F.2d at 619.

The willingness to give effect to words sufficiently evidencing an intention to incorporate conditions in the contract of carriage exemplified in *Murray, Baron, Foster* and *Geller* may have been influenced by the disparity in the results with respect to steamship lines produced by the doctrine of *The Majestic* as against those attained by other carriers under the rule that valid limitations in tariffs filed with regulatory agencies of the United States are binding, whether embodied in the transportation documents, as in Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct.

---

4. Examination of the record in *Baron* shows that both these legends were in solid capitals.

5. Examination of the record in *Foster* shows that the upper part of the box bore a legend in bold face type:

NOTICE: The attention of passengers is specially directed to the terms and conditions of this Contract.

The conditions were at the side of the box. They began with a preamble containing language of contract and continued, in bold face type:

AND IT IS MUTUALLY AGREED THAT THIS CONTRACT TICKET IS ISSUED BY THE COMPANY OWNING OR CHARTERING THE SHIP AND ACCEPTED BY THE PASSENGER ON THE FOLLOWING TERMS AND CONDITIONS.

148, 57 L.Ed. 314 (1913), or not, as in Boston & Maine R.R. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914); Galveston, Harrisburg & San Antonio Ry. v. Woodbury, 254 U.S. 357, 41 S.Ct. 114, 65 L.Ed. 301 (1920); and Western Union Tel. Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921)—despite the distinction that in the latter cases "The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed." 256 U.S. at 572, 41 S.Ct. at 586. Doubtless courts have also come to recognize that substantive provisions such as those in 46 U.S.C. § 183b with respect to time periods for filing claims and bringing suit and § 183c invalidating exculpatory clauses for loss of life or bodily injury afford more effective protection than insistence on particular forms of words or type fonts.

■ However, the thread that runs implicitly through the cases sustaining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights. This was made explicit in the leading English case since those cited in *The Majestic* to consider whether a steamship ticket's terms and conditions are included in the passage contract, Hood v. Anchor Line (Henderson Brothers) Ltd., [1918] A.C. 837. There, the "document or ticket was enclosed in an envelope containing on the outside a finger pointing to the words 'Please read conditions of the enclosed contract.' * * * There was in prominent type on the face of the document the word 'Notice' followed by the words 'This ticket is issued to and accepted by the passenger subject to the following conditions.' * * * There is a further note in special type at the foot of the ticket: 'Passengers are particularly requested to carefully read the above ticket.'" Id. at 847–48. The House of Lords held this notice sufficient to incorporate a condition on the ticket limiting the steamship line's liability for personal injuries to £10. Lord Chancellor Finlay, stressing the "conspicuous notice" on the envelope, the "conspicuous type" of the notice above the conditions, and the capital letters of the statement at their foot, agreed with the trial judge who "was unable to conceive what further or better means the defenders could have employed to bring to the knowledge of passengers the existence of the contract conditions." Id. at 842. Viscount Haldane thought that while "No doubt the burden of proof lies on the respondents to show that they did all that was reasonably required in order to bring this condition to the notice of [the passenger's agent who purchased the ticket,] * * * the Courts below * * * have properly decided that they have." Id. at 845. Lord Dunedin, too, thought the trial court correct in finding "that the respondent did what was reasonably sufficient to bring to the appellant's notice the existence of the condition," id. at 847, as did Lord Parmoor, id. at 848–49.

■ How far the legend in the Italian Line's ticket alleged to effect incorporation fell below what could reasonably have been expected is sufficiently shown by contrasting it with the forms used by other steamship companies in the cases we have discussed. Nothing whatever was done to impress the importance of the terms and conditions upon the passenger. Indeed, although no point has been made of this, the English version is probably inadequate even from a literal standpoint since it refers only to "the conditions printed on the cover" whereas Article 30 seems rather to have been on one of the sheets forming part of the passenger's coupon.[6] While we would not insist on any particular rubric, seventy years of experience under *The Majestic* doctrine should have enabled the draftsman of the ticket to produce

---

6. We do not base our decision on this since it is readily inferable from Silvestri's deposition that he understands Italian, which also refers to the "leaves."

a warning significantly more eye-catching than this. To be sure, it can be said that all this is legalism, since Silvestri should have known the Italian Line had not gone to the trouble of printing the Terms and Conditions for the fun of it and would not have read them no matter what was said; and we confess some doubt how far the intensity of ticket reading by steamship passengers correlates with the strength of the invitation to indulge in it. All this, however, could have been said with equal accuracy of the Misses Potter, yet *The Majestic* decided what it did. It may be argued also that the lawyer whom Silvestri consulted in Italy after he had discarded the ticket should have been aware that steamship tickets commonly contain limitations on the time for bringing suit, could have obtained a duplicate from the Italian Line to which he complained, and perhaps even did so. If the company can establish that because of the lawyer's advice or otherwise Silvestri knew that the ticket required him to bring suit within a year, we might have a different case. We hold only it was error to grant summary judgment for the respondent.

Reversed.