**William McQUILLAN, Plaintiff,**

v.

**"ITALIA" SOCIETA PER AZIONE DI NAVIGAZIONE, Defendant.**

**No. 73 Civ. 2300.**

United States District Court,
S. D. New York.

Nov. 18, 1974.

---

Harold I. Gold, New York City, for plaintiff.

Louis J. Gusmano, Kirlin, Campbell & Keating, John R. Geraghty, New York City, for defendant.

## MEMORANDUM AND ORDER

WERKER, District Judge.

This is but one more in a long line of "passage contract" cases reaching back at least as far as The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897). Plaintiff and his wife were passengers on a Caribbean cruise on the defendant's vessel, the S.S. Michelangelo. On February 7, 1973, four days after the start of the cruise, the plaintiff was injured when a deck chair on which he attempted to sit collapsed under him.

On April 5, 1974, the plaintiff, alleging negligence on the part of the defendant, filed suit in the Supreme Court of the State of New York. Following what has become a common pattern in these cases, the defendant removed the case to this court on diversity grounds and then

moved pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure for summary judgment based on a condition in the passage contract which limited the time for bringing suits against the defendant to one year from the date of the injury.[1]

It is uncontroverted that the plaintiff purchased two tickets in New York from a travel agent for a cruise aboard the S.S. Michelangelo from New York to the Caribbean and back to New York. After making reservations and leaving a deposit in October, 1972, the plaintiff paid the balance due on January 12, 1973. The passage tickets were received by the plaintiff approximately one week before sailing, and according to the plaintiff's affidavit, were picked up by the defendant just prior to boarding and were never signed or seen by the plaintiff again.

In response to defendant's motion for summary judgment, the plaintiff argues that the terms and conditions contained in the "passage contract" were not incorporated into any "contract" because the standards for incorporation recently enunciated by this Circuit in Silvestri v. Italia Societa Per Azioni Di Navigazione (Italian Line), 388 F.2d 11 (2d Cir. 1968), were not satisfied. In Silvestri,

Judge Friendly analyzed in detail the two distinct lines of passage ticket contract cases which have involved the issue of incorporation of the numerous terms and conditions which every steamship company seems to include in their passenger tickets. One line originates with the doctrine established in The Majestic and disallows incorporation,[2] while the other follows Judge Cardozo's opinion in Murray v. Cunard Steamship Co., 235 N.Y. 162, 139 N.E. 226 (1923) and allows incorporation.[3] According to Judge Friendly:

> "[T]he thread that runs implicitly through the cases sustaining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights."[4]

After a detailed comparison of the ticket at issue in Silvestri with the forms used by other steamship companies, Judge Friendly concluded that "the Italian Line's ticket alleged to effect incorporation fell below what could reasonably have been expected" since "nothing whatever was done to impress the importance of the terms and conditions upon the passenger." Silvestri, supra,

---

1. The applicable provisions of the passage contract read as follows:

Art. 13 — NOTICE OF CLAIM
(a) The Company shall not be liable for any claim for loss or injury unless written notice thereof with full particulars shall be lodged with the Company or its agents within six (6) months from the day when the death or injury occurred in respect of any claim where Section 4283A of the Revised Statutes of the United States shall apply.

Art. 14 — TIME LIMIT ON CLAIMS
Suit to recover on any claim against the Company shall be instituted:
(a) As to claims mentioned in subdivision (a) of Article 13 above, within one (1) year from the day when the death or injury occurred. . . .

It is conceded that the plaintiff gave notice of his claim within the six month period.

2. Cases where incorporation was not allowed include: La Bourgogne, 144 F. 781 (2d Cir. 1906); The Minnetonka, 146 F. 509 (2d Cir. 1906); Smith v. North German Lloyd S.S.

Co., 151 F. 222 (2d Cir. 1907); Baer v. North German Lloyd, 69 F.2d 88 (2d Cir. 1934); Maibrunn v. Hamburg-American S.S. Co., 77 F.2d 304 (2d Cir. 1935); Bellocchio v. Italia Flotte Riunite, 84 F.2d 975 (2d Cir. 1936); The Kungsholm, 86 F.2d 703 (2d Cir. 1936); Silvestri, supra; Owens v. Italia Societa Per Azione Navigazione Genova, 70 Misc.2d 719, 334 N.Y.S.2d 789 (Civil Court 1972), aff'd, 75 Misc.2d 104, 347 N.Y.S.2d 431 (Sup.Ct. 1st Dept. 1973).

3. Other cases following the Murray doctrine include: Baron v. Compagnie Generale Transatlantique, 108 F.2d 21 (2d Cir. 1939); Foster v. Cunard White Star, 121 F.2d 12 (2d Cir. 1941); Geller v. Holland-America Line, 201 F.Supp. 508 (S.D.N.Y.), aff'd, 298 F.2d 618 (2d Cir. 1961), cert. denied, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 403 (1962); Lipton v. National Hellenic American Lines, 294 F.Supp. 308 (E.D.N.Y.1968); Miller v. Lykes Bros. S.S. Co., 467 F.2d 464 (5th Cir. 1972).

4. Silvestri, supra, 388 F.2d at 17.

388 F.2d at 17. The task for this court then is to determine whether the passage contract in issue meets the *Silvestri* standards. In order to make this determination, a detailed examination of the defendant's passage contract must be made.[5]

As a starting point, it should be noted that the defendant in *Silvestri* and the defendant in this action are one and the same, the Italian Line. Thus, the defendant's new form of passage contract must be "significantly more eye-catching" than its old one. Although the plaintiff has gone into excrutiating detail to distinguish the Italian Line's new ticket from the *Silvestri* ticket and other tickets where incorporation was found,[6] it is the court's conclusion that the new passage contract meets the standards set out in *Silvestri, i. e.*, it is significantly more eye-catching, and it reasonably communicates to the passenger the fact that the terms and conditions are important matters of contract affecting his legal rights.

In *Silvestri, supra*, at 14, the ticket was described as follows:

[A] "box" bore in the upper right hand corner the words:

Biglietto Di Passagio

Passage Contract

followed by an identifying number, and in the lower right hand corner the validating stamp of the issuing travel agent. Almost all of the captions in the "box" were in capital or bold face letters, the major exception being the following statements, which appeared in the upper left hand corner of the ticket in ordinary lower-case one-eighteenth inch type:

Il presente biglietto di passagio e soggetto alle condizioni stampate sulla copertina e sui fogli n° 1e 2.

Subject to the conditions printed on the cover of this ticket which form part of this contract.

The inconspicuousness of these statements was increased by the fact that they were squeezed immediately below a caption in bold face and to the left of one in capital letters. The two "leaves" which are an integral part of the coupon retained by the passenger were headed *"Terms And Conditions"* in bold face. Then followed 35 numbered paragraphs in very small print."

The "ticket" portion of the passage contract in the case at bar is substantially the same as that in *Silvestri*. Inexplicably, the printing in the upper left hand corner is in even smaller type than that in *Silvestri*. Also, the words "terms and conditions: pages 1 through 6" appear in small type at the bottom right of the ticket. However, there are significant differences. The terms and conditions are no longer printed on "leaves" attached to the ticket portion. Instead, they are contained in an oblong booklet, bound at the left edge which has a cover, followed by 6 pages of terms and conditions, and then the "ticket" and several copies.

Across the top of the cover of the passage contract in white lettering on a blue background appear the words "Italian Line," "Italia Soc. Di Navigazione-Genova," and "Italmar." Slightly below these words, and in the center appear the words "Ships of Italian Registry." Approximately ¾₀ of an inch below that line is a logotype consisting of three anchor devices arranged in a hori-

---

5. At this point I feel it appropriate to note my agreement with Judge Friendly's statement in *Silvestri* that:

"To be sure, it can be said that all this is legalism, since Silvestri should have known the Italian Line had not gone to the trouble of printing the Terms and Conditions for the fun of it and would not have read them no matter what was said; and we confess some doubt how far the intensity of ticket reading by steamship passengers correlates with the strength of the invitation to indulge in it."

6. Plaintiff has submitted for the Court's inspection photostatic copies of the tickets at issue in Siegelman v. Cunard White Star, 221 F.2d 189 (2d Cir. 1955); Geller, Lipton, and the original ticket from Silvestri. Plaintiff literally makes a line by line analysis of these tickets in reference to size, type, print and format.

zontal pattern approximately 5⅛ inches in width and 2⅜ inches high. Superimposed on this logotype in Italian, English, Spanish and Portugese, in black lettering approximately ⁹⁄₁₀ of an inch high, are the words "passage contract." Just below the logotype printed in two columns, the left hand column in Italian and the right hand column in English, in white lettering on the blue background, and in clearly legible type appears the following:

> Terms of Passage Contract. Passengers are kindly requested to read the conditions of this contract before accepting. "Italia," Societa per Azioni di Navigazione, hereafter referred to as "the Company," agrees to provide (continued page 2)

The wording continues onto the second page in smaller but still legible type:

> the transportation described herein to the person or persons named herein, subject to the terms set forth in this passage contract, printed on this page and on pages 3, 4, 5, 6.

Pages 2, 3, 4, 5 and 6 then go on to state 16 "articles" containing the terms of the contract. These terms are printed in a two column approach, the left hand column in Italian and the right hand column in English. The printing is small, but legible, and the title of each article is printed in bold face and in larger type.

■ The physical arrangement of the passage contract described above is similar to that in Lipton v. National Hellenic American Lines, 294 F.Supp. 308 (E.D. N.Y.1968), and although the warning on the cover of the Lipton ticket was

phrased in stronger terms,[7] I have concluded that this passage contract reasonably communicates the importance of the terms and conditions to the passenger and therefore they are incorporated into the contract.[8]

The finding that the terms and conditions were incorporated into the contract does not necessarily mean that defendant's motion for summary judgment should be granted, for there are other issues which must be examined including the validity of Articles 13 and 14 of the passage contract, and whether certain actions taken by the defendant subsequent to the filing of the plaintiff's notice of claim estop the defendant from asserting the time limitation conditions as a defense. These issues present the additional problem not raised by either party, of what law should be applied in determining these issues, since the passage contract contains the following provision:

> Art. 16—Suits
>
> Unless otherwise provided herein, all controversies arising out of this passage contract shall be determined according to Italian Law, and any suits brought against the Carrier may be brought only before the judicial authority of Italy.

Preliminarily, it should be noted that this is not a case governed by Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The alleged tort was committed on the high seas and involves a defense based on a contract made in New York, by a New York plaintiff, with performance

---

7. The following statement appears on the cover of the *Lipton* ticket: "Important Notice. Each passenger should carefully examine this ticket, particularly the conditions on pages 2, 3, 4 and 5." The top of the second page is headed "Conditions of Contract." Preceding the conditions is a statement which reads: "Notice: the Passenger's attention is particularly directed to the Terms and Limitations appearing on this and the following pages of this Contract." The coupon part of the ticket is marked: "Subject

to the conditions of contract on pages 2–3–4–5."

8. The type of passage contract booklet used in this case and in *Lipton* was also found to satisfy the *Silvestri* standards by then District Judge Gurfein in Ager v. D/S A/S Den Norske Afrika-OG Australielinie Wilhelmsens Dampskibsaktieselskab, 336 F.Supp. 1187 (S.D.N.Y.1972), although summary judgment was denied because the plaintiff claimed that he never received the ticket.

there and on the high seas. Thus "the substantive law to be applied [including choice-of-law rules] is the 'general maritime law' of which the ultimate expositor is the Supreme Court of the United States." Jansson v. Swedish American Line, 185 F.2d 212, 216 (1st Cir. 1950); Siegelman v. Cunard White Star, 221 F. 2d 189 (2d Cir. 1955).[9]

It must now be determined what choice of law rule would be applied under the "general maritime law."[10] This question leads into the often confusing and sometimes metaphysical principles of conflict of laws.

In Siegelman v. Cunard White Star, 221 F.2d 189, 192 (2d Cir. 1955), the passage contract contained a clause providing "All questions arising on this contract ticket shall be decided according to English law with reference to which this contract is made." Judge Harlan concluded that the validity and

interpretation of the contract were governed by English Law since "[t]he language of the clause, covering 'all questions,' indicates that validity as well as interpretation is embraced." Siegelman, supra, at 194.[11] This was taken to represent the intention of the parties even though the contract was a contract of "adhesion."[12] The pertinent clause in the case at hand is different from that in Siegelman since it is prefaced with the words "Unless otherwise provided herein" (emphasis added). Articles 13 and 14 of the passage contract [notice of claim, and time limit on claims] specifically refer to claims where section 4283A of the Revised Statutes of the United States shall apply (46 U.S.C.A. § 183b (1970)). Thus, following the reasoning in Siegelman, the statutory law of the United States, not Italian law, would be applied to determine the validity of Articles 13 and 14.

9. In *Siegelman*, then Circuit Judge Harlan, characterized the question as "not a question of choice of laws, properly speaking, but rather a question of the division of competence between federal and state authority." *Id.* at 192.

10. In *Jansson*, the Court noted that "In developing and formulating 'approved rules of the general maritime law,' the federal courts are necessarily confronted, from time to time, with choice of law problems; and the rules for determining such choices become themselves a part of the general maritime law as understood and applied in the United States." 185 F.2d at 218. As of the date of *Jansson*, there were no Supreme Court cases on the question so the court examined other federal precedents. In the case at bar, other federal precedents—usually involving similar personal injuries to passengers — were examined to determine the issues of incorporation, choice of law rules, and estoppel.

11. In *Siegelman*, the issues involved the validity and interpretation of the contract provisions, not whether the provisions were in fact incorporated into the contract. The court cited Foster v. Cunard White Star, 121 F.2d 12 (2d Cir. 1941) for the proposition that the entire ticket constituted the contract. This was explained in Fricke v. Isbrandtsen Company, 151 F.Supp. 465, 468 (S.D.N.Y.1957) as follows: "In the *Siegelman* case, all of the incidents with respect

to the making of the contract took place in the United States. Accordingly, the court could feel itself free to apply American contract notions in a choice of law context. This it did, supporting its finding of a contract and therefore a binding choice of law provision by an earlier case [*Foster*] which held a steamship ticket to be a contract as a matter of substantive law." (footnote omitted). *See also* Jansson, supra, 185 F.2d at 19. In the case at bar, the issue of incorporation has already been discussed, supra, and it should be noted that as with the other issues on this motion, the "general maritime law" of the United States was applied, not Italian law.

The restatement (second), Conflict of Laws, Section 187, Comment b, takes the position that' choice of law provisions in adhesion contracts are usually respected, but will be scrutinized with care. See also the discussion of the restatement (second) position and the recent case of the Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) in Prebble, Choice of Law to Determine the Validity and Effect of Contracts: A Comparison of English and American Approaches to the Conflict of Laws, Part I, 58 Cornell L.Rev. 433, 514 (1973).

12. Judge Frank filed a dissent in *Siegelman* in which he severely criticized adhesion contracts. *See* 221 F.2d at 204–206 and authorities cited therein.

Other cases, however, treat the intention of the parties as only one factor to be considered and instead, apply a "grouping of the contracts" or "center of gravity approach." *See, e. g.*, Jansson v. Swedish American Line, 185 F.2d 212 (2d Cir. 1950); Pisacane v. Italia Societa Per Azioni Di Navigazione, 219 F.Supp. 424 (S.D.N.Y.1963); Caruso v. Italian Line, 184 F.Supp. 862 (S.D.N.Y. 1960); Fricke v. Isbrandtsen Company, 151 F.Supp. 465 (S.D.N.Y.1957); McCaffrey v. Cunard Steamship Company, 139 F.Supp. 472 (S.D.N.Y.1955); Mulvihill v. Furness, Withy & Co., 136 F.Supp. 201 (S.D.N.Y.1955). *Cf.* Navegacion Goya, S.A. v. Mutual Boiler & Machinery Ins. Co., 50 Am.Mar.Cas., 650, 653 n.1 (S.D.N.Y.1972); Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788 (1889). This approach has been applied even when specific reference has been made in the contract to section 4283A of the Revised Statutes of the United States. *See Mulvihill, supra; Fricke, supra.*

■ As already discussed, the plaintiff in this case is a New York citizen, the contract was entered into in New York, the cruise originated in New York, and the alleged tort was committed on the high seas. Thus it appears that whether the intention of the parties conflict rule or the "grouping of contracts" or "center of gravity" approaches are applied, the validity of the contract provisions must be determined by the "general maritime law" of the United States.[13] The applicable statute, 46 U.S.C.A. § 183b (1970)[14] was enacted by Congress and its validity has repeatedly been upheld.[15] *See* Ager, *supra*, 336 F.Supp. at 1188; Jansson, *supra*, 185 F.2d at 221; Schwartz v. S. S. Nassau, 345 F.2d 465 (2d Cir.), cert. denied, 382 U.S. 919, 86 S.Ct. 294, 15 L. Ed.2d 234 (1965); Scheibel v. Agwilines, 156 F.2d 636 (2d Cir. 1946); Moore v. American Scantic Line, 30 F. Supp. 843, 845 (S.D.N.Y.1939).[16]

One final issue remains to be determined and that is the question whether the actions taken by the defendant subsequent to the plaintiff's filing of a notice of claim estop the defendant from asserting the time limitation conditions in the passage contract.[17] Upon his re-

13. More modern approaches to conflict of laws questions speak in terms of "government interests." *See, e.g.,* Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954); Intercontinental Planning, Limited v. Daystrom, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969); *Prebble, supra,* note 10. Under such an approach, the law of the United States would still be applied here. *See* the discussion of 46 U.S.C.A. § 183b, *infra.*

14. The statute states in pertinent part: "(a) It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."

15. In Mulvihill v. Furness, Withy & Co., 136 F.Supp. 201 (S.D.N.Y.1955) the court noted that: "It has been declared that the purpose of the relevant statute, 46 U.S.C.A. § 183b, is to regulate the 'relationship between a common carrier of passengers and passengers', to remedy abuses which had arisen through the efforts of shipowners engaged in commerce carriage to limit unreasonably their obligations, and that 'the Congress has created a new public policy as to what it thinks to be reasonable, just and fair. It has arbitrarily set a period of time within which suit must be commenced.'" *Id.* at 207 (footnote omitted).

16. The conflict of laws issues discussed herein are of more than mere academic interest. If Italian law were held to apply, the validity of the time limitation conditions would be questionable. *See* Pisacane v. Italia Societa Per Azioni Di Navigazione, 219 F.Supp. 424 (S.D.N.Y.1963).

17. This issue like the other issues in this case will be determined according to the "general maritime law" of the United States and not Italian law. *See* Siegelman, 221 F. 2d 11 *supra*, at 194 and Judge Frank's dissenting opinion at 199.

turn to New York the plaintiff notified the defendant of his injuries by letter and asked for compensation. On March 6, 1973, the manager of the defendant's claims department acknowledged receipt of the plaintiff's request for compensation. The letter written to the plaintiff also contained the following statements:

> While our doctor could not find any objective symptoms resulting from this incident, we would greatly appreciate your remitting to us a report from the doctor presently treating you and any medical or other bills encountered in this connection. We shall then be in a better position to evaluate your demand.
>
> In the meantime, please note that the above is written without prejudice to any of our rights under the Passage Ticket or otherwise and must not be construed as an admission of liability in the premises.

On May 3, 1973, a copy of the defendant's letter to the plaintiff was sent to the plaintiff's lawyer.

There were several other items of correspondence between the two parties including: a letter from plaintiff's attorney to defendant on May 18, 1973, in which the attorney sent a copy of the plaintiff's doctor's report and offered the defendant an opportunity to have the plaintiff examined by defendant's physician; a reply by the defendant asking for copies of the finalized bills, re-serving the right to examine the plaintiff, and stating that "this is written to you without prejudice and should in no way be deemed an admission of liability in the premises, or otherwise"; a letter from plaintiff's attorney to defendant on March 25, 1974, in which a bill for x-rays was enclosed and which inquired whether the defendant intended to waive a physical examination of the defendant; and finally, a letter from the defendant to the plaintiff on April 1, 1974, informing the plaintiff that the one year limitation in the Passage Ticket for bringing suit had expired. This last letter was the first time that the defendant had mentioned the one year limitation.

■■ The facts presented do not establish an estoppel. The letters sent by the defendant were written "without prejudice" and contained a denial of liability. There were no promises or offers of settlement or other representations made which would support the plaintiff's estoppel argument.[18] "The most that can be said is that defendant did not remind plaintiff through his attorney of the one-year deadline, and clearly the law imposes upon him no obligation to do so." Johnson v. Swedish Transatlantic Lines (Rederiaktiebolaget Transatlantic), 368 F.Supp. 612 (S.D.N.Y.1974).[19]

The defendant's motion for summary judgment is granted.

So ordered.

---

18. See Scheibel v. Agwilines, 156 F.2d 636, 638–639 (2nd Cir. 1946); Born v. Norwegian America Line, 173 F.Supp. 33, 34–35 (S.D.N.Y.1959) (Weinfeld, J.); Siegelman v. Cunard White Star, 221 F.2d 189, 197–198 (2nd Cir. 1965). In Born, although Norwegian law governed, Judge Weinfeld concluded that there was no waiver or estoppel "as [they are] known to American courts." 173 F.Supp. at 34. In Siegelman, English law was applied and no estoppel found. Judge Frank, in his dissenting opinion, would have found an estoppel under "federal and New York decisions." 221 F.2d at 199. However, the facts in Siegelman presented a much stronger case for the plaintiff there since settlement offers had been made and the defendant had told the plaintiff that it was not necessary to commence an action.

19. Even though the court in Johnson applied Swedish law, the conclusion as to the estoppel was reached after "studying the exhibits and both Swedish and American law on the subject." 368 F.Supp. at 612. Contra, McCaffrey v. Cunard Steamship Company, 139 F.Supp. 472, 474–475 (S.D.N.Y.1955) (summary judgment denied, English law applied).