David HOLLANDER and Arlene
Hollander, Plaintiffs,

v.

K–LINES HELLENIC CRUISES, S.A.
and Kavounides Shipping Company,
a Subsidiary, Defendants.

No. 85 Civ. 9474.

United States District Court,
S.D. New York.

Oct. 5, 1987.

Kanon & Mandel, Brooklyn, N.Y., for
plaintiffs.

Freehill, Hogan & Mahar, New York
City, for defendants.

## OPINION

GRIESA, District Judge.

This is an admiralty action brought by
two passengers who took a cruise in the
Greek islands on board the Greek flag ves-
sel MTS Constellation. Plaintiff David
Hollander claims that he became ill and
was cared for negligently. The suit is
brought against two companies alleged to
be owners of the Constellation. It now
appears that these two companies may be
agents for a third company, which is the
owner of the vessel.

Defendants move to dismiss the action
on the ground that the Passage Contract
requires this suit to be brought in Piraeus,
Greece. The motion is granted.

## FACTS

Plaintiffs are husband and wife, citizens
and residents of New York. Defendant
K–Lines Hellenic Cruises is the trade name
of Kavounides Hellenic Cruises, Inc. This
entity is a New York corporation and has

an office at 645 Fifth Avenue, New York City. It is in the business of arranging bookings for various European shipping companies, including the owners of the Constellation.

On June 21, 1983 plaintiffs obtained a Passage Contract in New York for their cruise to the Greek islands. It appears that the Passage Contract was obtained through a travel agent named Homeric.

Plaintiffs flew from New York to Greece for the cruise. The cruise commenced in Piraeus, Greece on August 1, 1983 and concluded on August 5, 1983 in Piraeus.

The amended complaint alleges that Mr. Hollander's bout of illness commenced on August 2, and that defendants were negligent in that they failed to have proper medical facilities on the ship, failed to give Mr. Hollander timely and adequate assistance in seeking outside medical help, and had him treated by an unqualified nurse. It is claimed that defendants' negligence exacerbated a pre-existing condition. Mr. Hollander makes a claim for his worsened physical condition, and Mrs. Hollander asserts a claim for loss of companionship and services. They request damages totalling $150,000.

The allegations of the amended complaint are in rather general terms. However, pre-trial proceedings, including conferences before the court, have brought out that Mr. Hollander had a urological problem prior to the cruise. He claims that on the second day of the cruise he became ill, and that a nurse employed a catheter in assisting him and that she inserted an incorrect catheter. It appears that a doctor, who was a passenger on the ship, removed the catheter and gave further assistance to Mr. Hollander. He was subsequently treated by a Greek doctor in Rhodes and another Greek doctor in Athens. None of these doctors was an employee of defendants or of the vessel owners.

At the present time the record does not show the names of the nurse, the passenger-doctor or the doctor in Rhodes. The name of the doctor in Athens is Kepemekidis.

In addition to complaining about negligence on the part of the nurse, plaintiffs complain about the conduct of three officers of the ship—Captain Stamou, Staff Captain Dandouras and Purser Anagnostou. The three officers reside in Greece. Presumably the nurse does also.

Mr. Hollander claims that the negligence of defendants made it necessary for him to have surgery when he returned to the United States, involving the removal of the prostate and a vasectomy. The physician was Dr. Martin Alexander, who resides in Greenwich, Connecticut.

As already indicated, defendants contend that the present action should be dismissed because the Passage Contract issued to the Hollanders provided that any such action must be brought in Greece.

The Passage Contract is a small booklet, approximately the size of a standard airline ticket. The booklet has a cover, seven interior pages and a back. Two of the interior pages are printed on both sides and are headed, in large type, "TERMS, CONDITIONS AND EXCEPTIONS." There are 29 numbered paragraphs. Paragraph 28 provides:

> Jurisdiction. All claims and disputes under this ticket shall be decided exclusively by the Piraeus Courts according to Greek Law and particulars to the provisions of the Greek Private Maritime Code with respect to contracts for the carriage of passengers and with the exclusion of the Law or Courts of any other country.

On the cover there is the following prominent notice:

> Please read before accepting. Every passenger should thoroughly peruse the terms of the passage contract—printed on the inside pages—and especially the clauses referring to the relient [sic] and limitation of the ship's liability. This contract is binding upon acceptance.

Following the two printed pages containing the 29 paragraphs of the contract there is a document called the "coupon," with spaces to be filled out showing the name of the ship, the port of embarkation, the name of the passenger, the cabin number, the fare, etc. The coupon has an original and

four copies. The original and three copies are to be torn out when the passenger boards the ship. One copy is retained by the passenger. At the bottom of the coupon is the following notice:

Passengers should read the terms of the contract printed herein. In accepting this ticket the passenger is bound by such terms which form an integral part of the contract between the passenger and the Company.

The Hollanders were required to produce the Passage Contract when they boarded the ship. The original and three copies of the coupon were torn out and the Hollanders retained the rest of the Passage Contract.

## DISCUSSION

■ Terms and conditions contained within a passage contract are binding and enforceable if the contract provides adequate notice, and if the terms and conditions are not unreasonable, unjust or violative of important public policy, and are not the result of fraud or overreaching. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir.1968).

There is no issue here about fraud or overreaching. The issues to be discussed relate to the other criteria.

### 1. *Adequacy of Notice*

■ *Silvestri, supra,* involved a passage contract which contained a provision limiting the time within which a personal injury action could be brought by a passenger. The court stated that, in order to give proper notice of such a provision, the steamship line must do "all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." *Id.* at 17. The court then found that the ticket in question did not comply with this standard. The relevant terms were inconspicuous, and "nothing whatever was done to impress the importance of the terms and conditions upon the passenger." *Id.*

A Southern District case has stated that the court must determine whether the "carrier ... apprise[d] the passenger of both the existence and importance of contractual periods of limitation in order to find the restriction enforceable." *Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337 (S.D.N.Y.1981).

*McQuillan v. "Italia" Societa Per Azione Di Navigazione,* 386 F.Supp. 462 (S.D.N.Y.1974), *aff'd,* 516 F.2d 896 (2d Cir. 1975), upheld a limitation provision in a passage contract similar to the one in the present case. The *McQuillan* contract was a small booklet, with the cover bearing a warning paragraph, and the limitation provision appearing in the interior in small, but legible, type.

The Passage Contract issued to the Hollanders gave adequate notice of the terms and conditions, which included the forum selection clause. A reasonable person would be made aware of the existence and importance of the provisions contained within the contract. It should be noted that plaintiffs do not allege that they did not in fact read the forum selection provision.

### 2. *Reasonableness*

■ A forum selection clause is valid and enforceable unless the court finds that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917. *See also AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148, 155 (2d Cir.1984).

Plaintiffs cite a number of cases indicating the possibility of invalidating such a clause on the ground that a plaintiff will effectively be denied his day in court. However, in each of these cases the forum selection clause was actually held to be

valid. *Mercury Coal and Coke, Inc. v. Mannesman Pipe & Steel Corp.*, 696 F.2d 315 (4th Cir.1982); *Intermountain Systems, Inc. v. Edsall Construction Co., Inc.*, 575 F.Supp. 1195 (D.Colo.1983); *C. Pappas Co., Inc. v. E & J Gallo Winery*, 565 F.Supp. 1015 (D.Mass.1983); *Anastasi Bros. Corp. v. St. Paul Fire & Marine Ins. Co.*, 519 F.Supp. 862 (E.D.Pa.1981); *Zima Corp. v. M.V. Roman Pazinski*, 493 F.Supp. 268 (S.D.N.Y.1980); *Hoes of America, Inc. v. Hoes*, 493 F.Supp. 1205 (C.D.Ill. 1979).

In a number of cases the Southern District has upheld forum selection clauses. For instance, in *Dukane Fabrics International, Inc. v. M.V. Hreljin*, 600 F.Supp. 202 (S.D.N.Y.1985), the court enforced a forum selection clause in a shipping contract which required litigation in Italy. *Envirolite Enterprises, Inc. v. Glastechnische Inc.*, 53 B.R. 1007 (S.D.N.Y.1985), *aff'd*, 788 F.2d 5 (2d Cir.1986), bears some similarity to the instant case. There an Australian corporation sent representatives to the United States in order to solicit American customers. Certain contracts were made, which were to be performed in Australia. The court upheld the forum selection clause requiring suit to be brought in Australia. The court in *Full-Sight Contact Lens v. Soft Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978), indicated that a party who freely contracts for a particular forum will not normally be able to avoid that forum by a mere claim of inconvenience. The cases appear to say that if the forum named in the contract has been chosen on some reasonable basis, rather than arbitrarily, the forum selection clause will be upheld.

In the present case the selection of Greece as a forum for litigation under the Passage Contract was not unreasonable, unjust, arbitrary or in violation of any public policy. The cruise took place in Greece. The injury occurred in Greece. Aside from plaintiffs themselves and Mr. Hollander's American physician, the persons involved in the events are located in Greece.

Of course, it is far more convenient for plaintiffs to sue in New York than in Greece. However, this circumstance is not sufficient to justify allowing plaintiffs to avoid the effect of the contract they entered into freely, providing for suit in the country where their cruise took place. *See Paterson, Zochonis (U.K.) Ltd. v. Compania United*, 493 F.Supp. 626, 630 (S.D.N.Y. 1980), in which the court stated, in upholding a forum selection clause, that "the relevant issue is not whether New York is a convenient forum but whether the forum chosen by the parties is so inconvenient as to meet the *Bremen* test."

It should be noted that plaintiffs offer no suggestion that the courts of Greece will not handle their claims in a just and proper fashion.

For the foregoing reasons, the action is dismissed.

SO ORDERED.