**HOFFMAN–LaROCHE, INC., Plaintiff,**

v.

**M/V TFL JEFFERSON, et al., Defendants.**

**No. 86 Civ. 8776 (RLC).**

United States District Court, S.D. New York.

Jan. 23, 1990.

---

110

Harold M. Kingsley, New York City, for plaintiff Hoffmann–LaRoche, Inc.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for defendant M/V TFL Jefferson; Thomas Tisdale, of counsel.

Gerald H. Ullman, P.C., New York City, for defendants Panalpina, Ltd. and Panalpina A.G.; Jonathan D. Shramko, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Hoffmann–LaRoche brought this action against defendants Panalpina, Ltd. and Panalpina A.G. (collectively "Panalpina")[1] seeking damages for, *inter alia*, the loss of a shipment of pharmaceuticals during a voyage of the S/S TFL Jefferson from Bremerhaven, Switzerland to New York in December of 1985. Panalpina contracted with plaintiff to ship plaintiff's cargo on the voyage in question but failed to pass on to the ocean carrier plaintiff's instructions requiring under deck stowage. The cargo was stowed on the weather deck of the vessel and was lost at sea during the voyage.

Currently before the court is a motion by Panalpina for summary judgment pursuant to Rule 56, F.R.Civ.P. Panalpina seeks a judgment dismissing plaintiff's action pursuant to a forum-selection clause contained in a "shipping advice" issued by Panalpina to plaintiff. Such documents were issued in connection with both the shipment at issue and other shipments over an extended period. These documents place jurisdiction in Basle, Switzerland.

Panalpina also seeks dismissal on the merits, arguing that plaintiff was on notice that its cargo could not be stowed as it had requested due to an applicable tariff restriction. Alternatively, Panalpina seeks to limit plaintiff's potential recovery to 26,000 Swiss francs pursuant to the shipping advice and the General Conditions of the Swiss Forwarders' Association which that document incorporates by reference.

Plaintiff responds that Panalpina acted as a "common carrier" under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. App. § 1300 *et seq.* (1975 & Supp.1989), regarding the shipment at issue and that, under that statute, any forum-selection provision is unenforceable. Plaintiff also challenges the forum-selection clause on the ground of laches. As to the merits of its claim, plaintiff asserts that it was unaware of the purported tariff provisions and that Panalpina may therefore not rely upon them to escape liability. Finally, plaintiff asserts that Panalpina's failure to forward plaintiff's instructions regarding stowage of its cargo to the vessel operators invalidates any limitation of liability.

■ The central inquiry in the disposition of this motion is whether the agree-

---

1. The claims of other parties plaintiff in this action have been settled, as have plaintiff Hoffmann–LaRoche's claims against defendants M/V TFL Jefferson, Timur Jefferson and Trans Freight Lines, Inc.

ment in issue is governed by COGSA. If the statute is applicable, then the forum-selection clause upon which Panalpina seeks to rely is unenforceable. *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200, 204 (2d Cir. 1967). Otherwise, the court must determine the validity of the clause under the principles articulated by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and the doctrine of laches raised by plaintiff. The applicability of COGSA hinges in turn upon whether Panalpina may properly be characterized as a "common carrier" under the statute, 46 U.S.C.App. § 1303(8), or merely as a freight forwarder. Only the former status would bring the parties' contract under the purview of COGSA. *Id.*[2]

In determining whether a party acted as a forwarder or as a carrier in a given transaction, a court must consider such factors as:

> (1) the way the party's obligation is expressed in documents pertaining to the agreement, although the party's self-description is not always controlling; (2) the history of dealings between the parties; (3) issuance of a bill of lading, although the fact that a party issues a document entitled "bill of lading" is not in itself determinative; (4) how the party made its profit, in particular, whether the party acted as "agent of the shipper ... procuring the transportation by carrier and handling the details of shipment" for fees "which the shipper paid in addition to the freight charges of the carrier utilized for the actual transportation."

*Zima Corp. v. M.V. Roman Pazinski*, 493 F.Supp. 268, 273 (S.D.N.Y.1980) (Connor, J.) (quoting *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 484, 69 S.Ct. 692, 701, 93

L.Ed. 817 (1949)) (other citations omitted) (ellipses in original).[3]

Regarding the manner in which Panalpina made its profit on this shipment, plaintiff is correct that the evidence points more strongly toward carrier status. It is undisputed that Panalpina accepted plaintiff's less than container load (LCL) cargo and consolidated it with other LCL cargo to constitute a complete container load. Further, according to the facts stipulated in the Pretrial order, "Panalpina was not compensated for the Hoffmann–LaRoche shipment in question by means of a freight forwarder's commission but rather earned its profit by the difference between the rate charged to the shippers of the various consignments it consolidated and the amounts paid by Panalpina for transportation and other costs to carriers and handlers." Pretrial Order ¶ 7. In addition, Panalpina A.G.'s Assistant Director has indicated that the projected profit on the shipment in question was to be derived in part "[b]y filling the container." Deposition of Dieter Stegmann at 74–76. In this regard, the transaction is characteristic of a shipper/carrier relationship. *See, e.g., Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Acme Fast Freight, supra,* 336 U.S. at 484, 69 S.Ct. at 701 (forwarder-carrier made profit from exploiting the spread between container load and LCL rates); *Zima, supra,* 493 F.Supp. at 273 (same).

Resolution of the other three criteria, however, militates toward forwarder status. It is uncontroverted that the shipping advice and transport confirmations that Panalpina issued to plaintiff stated that the former's activity was exclusively based on the "General Conditions (1980)" of the Swiss Forwarders' Association. Articles 28 and 29 of the General Conditions, with

---

**2.** As a general matter, "forwarders" act as agents of the shipper in procurring transportation and handling the particulars of shipment while "carriers" are directly responsible for effecting the conveyance itself. *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Acme Fast Freight,* 336 U.S. 465, 484, 69 S.Ct. 692, 701, 93 L.Ed. 817 (1949). In some cases, however, a party holding itself out as a forwarder may, by its activities, be charged with liability as a carrier. *Id.*

**3.** Plaintiff contends that the *Zima* case is inapplicable to the case at bar because the defendant there did not consolidate less than container load cargoes and earned a forwarder's commission. The court acknowledges that *Zima* is not factually identical to the instant action but rejects the notion that the standard articulated therein is therefore inappropriate here.

which plaintiff concedes familiarity, provide that Panalpina would assume carrier liability only if it executed a transport by its own means or issued to a shipper a "House Through Bill of Lading." As Panalpina took neither of these actions, the implication from the "documents pertaining to the agreement," *Zima, supra,* 493 F.Supp. at 273, is that it acted as a forwarder. Further, reference to the General Conditions was included in each shipping advice statement rendered to plaintiff during a twenty year course of dealing with Panalpina, although bills of lading were issued by Panalpina on some occasions during that period.

Considering the totality of the circumstances, the court determines that Panalpina acted as a forwarder rather than a carrier in the transaction at issue. In addition to the considerations discussed above, this conclusion is supported by the fact that plaintiff was aware of the vessel that would be used, as evidenced by the relevant shipping advice. Defendants' Memorandum of Law, Exhibit A. *See Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Acme Fast Freight, supra,* 336 U.S. at 484, 69 S.Ct. at 701 (finding such knowledge to be characteristic of shipper/forwarder relationship). Essentially, Panalpina undertook to arrange for transportation of the cargo, not to effect it. *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205, 210 (2d Cir.1970).[4]

■ Having ascertained that the contract at issue is not governed by COGSA, the court must now determine the effect of the forum-selection clause. As plaintiff makes no allegations of fraud or undue influence, and there are no implications of overweening bargaining power on the part of Panalpina or other injustice, the court finds the clause to be valid. *M/S Bremen v. Zapata Off-Shore Co., supra,* 407 U.S.

at 10, 92 S.Ct. at 1913 (forum-selection clauses should be enforced "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Hollander v. K–Lines Hellenic Cruises, S.A.,* 670 F.Supp. 563, 565 (S.D.N.Y.1987) (Griesa, J.) (looking to reasonableness, justice, fraud, overreaching and public policy considerations).

■ Plaintiff contends that even if the forum-selection clause is found to be valid, its enforcement should be barred under the doctrine of laches because Panalpina did not raise this issue until after substantial discovery had been conducted by the parties. As Panalpina points out, however, delay alone is not sufficient to justify such a result. *Essex Crane Rental v. Vic Kirsch Construction,* 486 F.Supp. 529, 535 (S.D.N.Y.1980) (Haight, J.) (quoting *Farmer Brothers Co. v. Coca Cola Co., Inc.,* 366 F.Supp. 725, 727 (S.D.Tex.1973)). Plaintiff must demonstrate prejudice to itself resulting from the delay. *General State Authority v. Aetna Casualty & Surety Co.,* 314 F.Supp. 422 (S.D.N.Y.1970) (Edelstein, J.).

In this regard, plaintiff argues that extensive discovery has been conducted by the parties in anticipation of litigation in this forum. It does not explain, however, in what way this actuality is prejudicial. In addition, Panalpina has demonstrated that the interim discovery was necessary in order for it to raise the forum-selection clause issue at all. Specifically, testimony was needed from one of plaintiff's witnesses to demonstrate the prior course of dealing between the litigants and that the shipping advices had in fact been employed by the parties. The court's disposition on this issue confirms that this information was necessary to the establishment of Panalpina's status as a forwarder. In short, the

---

4. Plaintiff's contention that because Panalpina admits to issuing an ocean bill of lading for other cargo stored in the same container as plaintiff's (the Rand McNally shipment), it has conceded common carrier status as to plaintiff's cargo, is without merit. Accepting *arguendo* plaintiff's assertion that the same facilities may not be legally used for both common carrier and private carrier transportation concurrently,

plaintiff has neither demonstrated defendants' carrier status as to the Rand McNally shipment, *see J.C. Penney Co. v. American Express Co.,* 102 F.Supp. 742, 746–47 (S.D.N.Y.1951) (Goddard, J.), *aff'd,* 201 F.2d 846 (2d Cir.1953) (fact that "forwarder" issued bill of lading not alone sufficient to impose carrier status), nor explained why this legal conclusion is necessarily dispositive as to its own shipment.

interim discovery facilitated assertion of the forum-selection clause issue and cannot properly be viewed as unduly prejudicial to plaintiff.

Plaintiff also argues that the Swiss courts may not give *res judicata* effect to a Stipulation of Partial Dismissal in favor of the vessel owner in this litigation signed by Panalpina, thus providing Panalpina with a potential "peril of the sea" defense. This objection speaks, however, to the prejudice which litigation under Swiss law might visit upon plaintiff, not to any detriment due to Panalpina's *delay* in raising the forum-selection clause issue, and is therefore irrelevant to the court's inquiry.

As the forum-selection clause in Panalpina's shipping advice is valid and not barred by laches, plaintiff's suit is dismissed as to Panalpina without prejudice pursuant to that clause.

IT IS SO ORDERED.