**J. George LIPTON, Plaintiff,**

v.

**NATIONAL HELLENIC AMERICAN LINES and Home Lines Agency, Defendants.**

**No. 66 C 1089.**

United States District Court
E. D. New York.

April 30, 1968.

Howard S. Kass, Brooklyn, N. Y. (Gerberbaum, Garson & Goldgerg, Brooklyn, N. Y., of counsel), for plaintiff.

William P. Larsen, and Joseph T. Stearns, New York City (Cichanowicz & Callan, New York City, of counsel), for defendants.

DOOLING, District Judge.

Plaintiff alleges that he was a passenger aboard the SS. QUEEN FREDERICA on February 25, 1965, and was on that day personally injured through the negligence of the defendant shipowner, and the unseaworthiness of its vessel, and through the shipowner's failure in these respects to perform its contract of safe carriage, a contract made on January 29, 1965. Plaintiff sued in Queens County Supreme Court on August 12, 1966, and the defendant shipowner removed on the diversity ground. (The second named defendant is apparently, for removal purposes, to be considered a New York corporation, it is alleged in the complaint to be the shipowner's agent, and the parties appear to be agreed that it is not genuinely a proper party to the action. Cf. 28 U.S.C. § 1441(c); American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738.)

The defendant shipowner has moved for summary judgment on the ground that the "Passage Contract Ticket" provided, at page 5 of five fine-print, double-columned pages preceding the filled-out coupon-pages, that

"22. [a] The Carrier shall not be liable for any claim whatsoever of the Passenger howsoever and wheresoever arising unless written notice thereof with full particulars shall be delivered to the Carriers as follows:

1. Within six (6) months from the day when the death or injury occurred in respect of any claim for loss of life or bodily injury in any case where Sec. 4823A of the Revised Statutes of the United States shall apply;

\* \* \* \* \* \* \*

[b] Suit to recover on any claim against the Carrier shall not be maintainable unless:

1. Suit is initiated within one (1) year from the day death or injury occurred in respect of any claim for loss of life or bodily injury in any case where said Sec. 4283A shall apply;

* * * "

The clause is drawn under 46 U.S.C. § 183b, enacted in 1935 as a new Section 4283A of the Revised Statutes, Title 48, Chapter 6 (49 Stat. 960). The question is whether plaintiff is so plainly bound by the contract clause that summary judgment is proper, for concededly he did not sue within the time fixed by the clause. Cf. Silvestri v. Italia Societa Per Azioni Di Navigazione, 2d Cir. 1968, 388 F.2d 11; Lisi v. Alitalia-Linee Aeree Italiane, Societa Per Azioni, 2d Cir. 1966, 370 F.2d 508, aff'd, equally divided Court, 1968, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27. It is concluded that defendant is entitled judgment.

The physical arrangement of the ticket is far more likely to alert the holder to the menace of its fine-print terms than the ticket in *Silvestri*. It is an oblong booklet, and it is bound at the left edge. It measures about 3⅝ inches from top to bottom and about 7¾ inches from the left edge to the right. In large type the cover is labelled "Passage Contract Ticket." In smaller but readily legible type the cover states, "IMPORTANT NOTICE. Each passenger should carefully examine this ticket, particularly the conditions on pages 2, 3, 4 and 5." Pages 2 to 5 start with the inside of the cover page. The top of page 2 is conspicuously headed "CONDITIONS OF CONTRACT." Then follow five pages, double-columned, of discouragingly fine print. The "conditions" opens with apt contract language—that the Line by issuing and the passengers by accepting or using the ticket mutually agree that the carrier will provide passage "as stated herein, subject to the terms appearing herein." The next paragraph reads, "NOTICE: The Passenger's attention is particularly directed to the Terms and Limitations appearing on this and the following pages of this Contract."

The following pages are slow and painful reading; they consist in very considerable part of exculpations and of explanations of the limitations on the carrier's undertaking. The contract conditions conclude with a clause 26: "The Passenger and, if another, the Purchaser hereof covenant and warrant that he or they have read this Passage Contract and that he or they are duly authorized on behalf of all the Passengers named herein by accepting this ticket to agree to and are bound by all the stipulations, terms and conditions herein contained in every contingency whatsoever and wheresoever occurring and even * * * during deviation or unseaworthiness of the vessel at the inception of the voyage or subsequently." Clause 7[a] provides, *inter alia*, that "The passenger shall not be entitled to transportation except upon production and surrender of this passage contract * * *," but it may be assumed that the surrender, if required, would not be until the end of the voyage and would not deprive a passenger of access to the terms of his passage contract. (See Coupon F. the "Passenger's Copy" of the passage coupon, forming the inside of the back cover of the ticket booklet.)

Page 6 of the ticket (the reverse side of page 5) deals with confirming return-voyage reservations, and pages 7–8 are a tear-out sheet for use in confirming return-voyage reservations. The only portion of the ticket filled out—in typewriting—is the "Embarkation Coupon" and its five carbon-copy counterparts; the coupon gives the ship's name, voyage data, passengers' names, price, etc. The coupon is marked at top left (to the right of the carrier's emblem) "PASSAGE CONTRACT" in large clear

type, and under those words, in smaller type, but type still as large as the rest of the printed type on the page, "SUBJECT TO THE CONDITIONS OF CONTRACT ON PAGES 2–3–4–5."

The printed signature of the carrier appeared at the foot of page 5; at the lower right hand corner of the "Embarkation Coupon" and its carbon counterparts appeared the stamp of the issuing travel agency in a ruled-off box in which were to be entered the date and place of issue and the name of the issuer and the signature of the issuing agent. The stamp impressed by the issuing travel agency gave its name and address and the date of issue.

The physical arrangement and the legal form of the ticket remove it from the class of tickets which bear endorsed conditions that are not effectively incorporated in the text of the passage contract (The Majestic, 1897, 166 U.S. 375, 381, 17 S.Ct. 597, 41 L.Ed. 1039; contrast Murray v. Cunard S. S. Co., 1923, 235 N.Y. 162, 165–166, 139 N.E. 226, 26 A.L.R. 1371; cf. Chandler v. Aero Mayflower Transit Co., 4th Cir. 1967, 374 F.2d 129, 134–137), and make the case one for summary judgment under Geller v. Holland-America Line, 2d Cir. 1962, 298 F.2d 618, aff'g, S.D.N.Y.1961, 201 F.Supp. 508, unless Silvestri interposes an obstacle. Cf. Siegelman v. Cunard White Star Limited, 2d Cir. 1955, 221 F.2d 189 (note dissent pp. 204–206). That case treats proof of the receipt and delivery of a sufficient passage contract ticket, as entitling the carrier to summary judgment, even if the plaintiff is not shown to have had actual knowledge of the terms of the ticket, and is shown to have surrendered it on embarkation.

*Silvestri* cannot be supposed to overrule *Geller*; *Silvestri* treats it, along with Foster v. Cunard White Star, 2d Cir. 1941, 121 F.2d 12, as marking the turn from the short line of Second Circuit cases that applied *Majestic* as enunciating a formal principle of contract formation operative to defeat liability limiting clauses that were not incorporated at least by reference in the passage contract by words that preceded the signature line of the contract; that principle did not automatically preclude the limitation of liability, for it seemingly left it open to the carrier to show affirmatively that before the passage contract was "made" the carrier managed to communicate actual notice of the unincorporated provision to the passenger. Cf. The Majestic, supra, 166 U.S. at 385–386, 17 S.Ct. 597, 41 L.Ed. 1039; The Kungsholm, 2d Cir. 1936, 86 F.2d 703, 704. Such passage contract tickets are certainly "contracts of adhesion" [see 6–A Corbin, Contracts, 1962 at 21–22 and fn. 17; Siegelman v. Cunard White Star, supra, 221 F.2d at 204–206 (dissenting opinion); Chandler v. Aero Mayflower Transit Co., supra, 374 F.2d at 135, fn. 11]; between passenger and carrier, very likely, there could be no rational expectation that the carrier would agree to any other term if, indeed, it would be a free to do so (cf. 46 U.S.C. 815); and, where, as here, the contract term is not open to challenge as being unreasonable or unfair (since 46 U.S.C. § 183b forbids that challenge) there is no reason to shrink from the conclusion that, "The passenger who omits to read takes the risk of the omission" (Murray v. Cunard S. S. Co., supra, 235 N.Y. at 166, 139 N.E. at 228). The matter was put in these terms in one of the opinions in Hood v. Anchor Line, [1918] A.C. 837, 845: "The real question is whether he [the passenger] deliberately took the risk of there being conditions in the face of a warning sufficiently conveyed that some conditions were made and would bind him." The Court there sustained a judgment limiting the liability of the carrier because the evidence supported the lower Court's conclusion that the carrier had done what was reasonably sufficient to give the passenger notice of the conditions of the contract. See [1918] A.C. at 842, 844–845, 846–847, 848.

*Silvestri*, then, appears to turn on the particular form of the ticket, its failure to come up to the standard of reasonable communicativeness that could be inferred from the forms of other carriers' tickets (388 F.2d at 17–18). The steamship ticket cases that have come up since the enactment of 46 U.S.C. § 183b and deal with the time limitation stand quite apart from Warsaw Convention cases in which the failure to alert the passenger before take-off to the existence of a condition incorporating the Convention may have irretrievably deprived him of an opportunity to buy trip insurance. Lisi v. Alitalia-Linee Aeree Italiane, supra, 370 F.2d at 512–513; Warren v. Flying Tiger Line, Inc., 9th Cir. 1965, 352 F.2d 494, 497–498; Mertens v. Flying Tiger Line, Inc., 2d Cir. 1965, 341 F.2d 851, 856–857; cf. Kilberg v. Northeast Airlines, Inc., 1961, 9 N.Y.2d 34, 39–40, 211 N.Y.S.2d 133, 172 N.E.2d 526. Compare New York, N. H. & H. R. R. v. Nothnagle, 1953, 346 U.S. 128, 135–136, 73 S.Ct. 986, 97 L.Ed. 1500 (no opportunity for passenger to declare higher value and pay additional charge). The time limitation clause, however, does not become relevant until after loss or injury occurs and inquiry is afoot. In view of the function of the clause, the type-size in which it is printed is not the significant matter; there is both ample time and a powerful incentive to study the passage contract ticket promptly after a loss has occurred, and at that time the relevant consideration affecting the time clause is whether or not it is formally a part of the passage contract. In the present case it is a formal part of the contract, and the entire contract was so arranged as to give such notice as could reasonably be expected of the existence and importance of the "conditions of contract."

It is accordingly

Ordered that the motion for summary judgment is granted and the Clerk is directed to enter judgment that plaintiff take nothing and that the action is dismissed on the merits with costs to the defendant National Hellenic American Lines.