**Joseph J. CADA, et al., Plaintiffs,**

v.

**COSTA LINE, INC., et al., Defendants.**

**No. 79 C 3937.**

United States District Court, N. D. Illinois, E. D.

Aug. 25, 1982.

See also 95 F.R.D. 346.

Edward T. Joyce, James E. Dahl, Steven J. Rotunno, Joyce & Kubasiak, Chicago, Ill., Paul McCambridge, Chicago, Ill., for plaintiffs.

Michael A. Snyder, S. Michael Ritter, Bradley, McMurray, Black & Snyder, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Joseph and Jean Cada ("Cadas") filed this class action against Costa Line, Inc. ("Line") and its parent company, Costa Armatori, S.p.A. ("Armatori"). Judge McGarr (to whom the case was first assigned) then certified a class of all passengers who have claims arising out of the March 30, 1979 fire on one of Armatori's cruise ships, *Angelina Lauro*. Defendants (collectively "Costas") have now moved for partial summary judgment, claiming each class member's recovery is limited by Articles 20 and 21 of the passage ticket (the "Ticket") to 120,000 Italian lire (about $150). For the reasons contained in this memorandum opinion and order, Costas' motion is denied.

Costas contend a Ticket was timely delivered to each passenger.[1] For purposes of this opinion it will be assumed (without deciding) that Articles 20 and 21, if valid and enforceable, would limit Costas' liability as they claim.[2] With that assumption,

---

insurer to make a more accurate estimate of its liability, its absence is not fatal to the plaintiff's case.

1. Cadas have provided uncontroverted evidence to the contrary as to at least some of the plaintiffs, which would itself be sufficient to bar summary judgment against the class. In light of the analysis in this opinion, factual disputes in that respect need not be dealt with at this time. Because this opinion makes plain that *notice* to passengers is the key to enforceability of the limitation on liability, such factual

issues must of course be dealt with in the future.

2. There may be unresolved factual areas in this respect as well. For example Article 20 says it is "mutually agreed that the maximum quantity of baggage that the passenger is allowed not to deliver to the carrier will not exceed 10 kilos per person." Of course no Caribbean cruise passenger limits his or her baggage to 22 pounds, and Costas obviously know it. Neither party has addressed the effect of Costas' conduct waiving that provision on the rest of Article 20.

the question posed by Costas' motion is whether the limitation on liability *must* be given effect as a matter of law.

Because of the approach taken by the leading cases in this area, it becomes important to describe the Ticket in some detail. It is actually a booklet about 8¼ inches by 3½ inches. Its cover features the Costa logo and the words "passage ticket" in English and other languages. At the top of page 2, set off in small but still readable boldface type, is the legend:

Terms and Conditions of contract of passage and baggage.

Each of pages 2 through 10 has two columns of printing almost as fine as the printer's art will allow (they appear to be 3- or 4-point type), in Italian on the left and English on the right. They contain 35 articles (Articles 20 and 21 are on page 7). After Article 35 the following sentence appears on page 10, set in the same slightly larger typeface as the all-capitals Article headings (all errors in grammar, punctuation and spelling are in the original document):

THE HOLDER OF THIS PASSAGE TICKET, DO HEREBY DECLARE TO THE EFFECTS AND UNDER PROVISIONS OF ARTT. 1341 and 1342 OF THE ITALIAN CIVIL CODE IN FORCE, THAT HE IS AWARE AND ADHERES TO ALL CONDITIONS AND CLAUSES SET FORTH IN THIS PASSAGE CONTRACT AND THAT HE SPECIFICALLY APPROVES CLAUSES Nos. 1, 2, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, and 35.

Next is a foldout page containing a passenger declaration form to be filled out and signed by the passenger. It is headed by several "Notices," none of which refers to baggage or the limitation of liability. Nor does any of the questionnaire blanks contain any provision for declaration of excess baggage value (which Article 20 provides as a condition of greater liability for the carrier).

Finally, near the back of the booklet, is the coupon portion of the Ticket. Each of six coupons, identical except for different letter designations, contains the ticket number, the Costa logo and separate blanks for the name of the ship, port of embarkation, date, class of passage, cabin and berth, passenger's name and the fare. In the upper left-hand corner is the following in Italian and English:

By accepting or using this ticket the passenger agrees to the terms and conditions appearing on pages 2/10.

Facts such as these have produced two inconsistent lines of authority among the Courts of Appeals (ours has not spoken on the subject) as to the enforceability of liability-limiting clauses. Compare such cases as *Silvestri v. Italia Societa per Azioni di Navigazione,* 388 F.2d 11 (2d Cir. 1968) and *DeNicola v. Cunard Line, Ltd.,* 642 F.2d 5 (1st Cir. 1981) (both relying on *The Majestic,* 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897)) with cases like *Miller v. Lykes Bros. S.S. Co.,* 467 F.2d 464 (5th Cir. 1972) (distinguishing *The Majestic* ).

But the dominant trend is exemplified by Judge Friendly's opinion in *Silvestri.* Later decisions have taken even "a more expansive view" of the problem (*DeNicola,* 642 F.2d at 9), and Judge Will of this District Court applied the *Silvestri* rule with approval from our Court of Appeals, *Hahn v. Norwegian America Line,* 1973 A.M.C. 794 (N.D. Ill. 1971), aff'd on the opinion below, No. 71–1398 (7th Cir. Apr. 19, 1972) (unpublished order).

*Silvestri* itself concluded, 388 F.2d at 17 (emphasis added):

However, the thread that runs implicitly through the cases sustaining incorporation is that *the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights.*

And the most recent word from a Court of Appeals on the issue, *DeNicola,* 642 F.2d at 9, summarized the current state of the law this way:

Subsequent decisions, however, have taken a more expansive view, suggesting

that the *Silvestri* approach should govern the analysis in most if not all steamship ticket cases. Specifically, the courts appear to have deemphasized such traditionally significant factors as the placement of the carrier's signature and the contents of the contract proper and focused instead on the adequacy of notice appearing anywhere in the ticket documents.

Thus Costas may prevail on their motion only if *as a matter of law* they did "all [they] reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." After examining the Ticket and comparing it to those in cases in which summary judgment was granted, this Court concludes a factual issue exists as to the "reasonable communicativeness" of the warnings in the Ticket.

*DeNicola* granted summary judgment for defendants, as did both *Hahn* and *McQuillan v. "Italia" Societa per Azione di Navigazione,* 386 F.Supp. 462 (S.D.N.Y. 1974), *aff'd on the opinion below,* 516 F.2d 896 (2d Cir. 1975). Comparison of the notice provisions in those three cases with the Ticket is illuminating:

1. In *DeNicola* the format of the ticket was similar to Costas', but the following appeared on the *cover page:*

Terms and conditions of contract

Notice. The attention of passengers is especially directed to the terms and conditions of this contract appearing within and it is mutually agreed that this contract ticket is issued by Cunard Line Limited and accepted by the passenger subject to such terms and conditions.

2. *Hahn* also featured far better notice than is present here—the following all-capitals legend printed in *red ink* on the *cover* of the ticket:

*IMPORTANT NOTICE:* THE ATTENTION OF PASSENGERS IS ESPECIALLY DIRECTED TO THE TERMS AND CONDITIONS OF THE "CONTRACT OF CARRIAGE" AND IT IS MUTUALLY AGREED THAT THE CONTRACT TICKET IS ISSUED BY THE COMPANY AND ACCEPTED BY THE PASSENGER SUBJECT TO THE TERMS AND CONDITIONS SET FORTH. A COPY OF THE "CONTRACT OF CARRIAGE" APPEARS ON THE REVERSE SIDE OF THIS PAGE AND CONTINUED ON THE INSIDE COVER OF THIS TICKET.

3. *McQuillan,* 386 F.Supp. at 465–66, also involved a notice beginning in prominent lettering on the *cover page* of the booklet and continuing onto the second page:

Terms of Passage Contract.

Passengers are kindly requested to read the conditions of this contract before accepting. "Italia," Societa per Azioni di Navigazione, hereafter referred to as "the Company," agrees to provide the transportation described herein to the person or persons named herein, subject to the terms set forth in this passage contract, printed on this page and on pages 3, 4, 5, 6.

As recently noted by Judge Werker (who authored *McQuillan* ) in *Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337, 341 (S.D.N.Y.):

I find it significant that the line of post-*Silvestri* cases enforcing contractual periods of limitations have all involved tickets or coupons with *conspicuous facial warnings.*[3]

There was no such clear facial warning in this case. It is at least possible that a jury could reasonably find as to the Ticket:

1. Its one-sentence statement (not phrased as a "notice" or warning), located in the upper left-hand corner of the page containing the filled-in blanks, was insuf-

---

3. *Raskin* like many of the other cases in this area dealt with a contractual period of limitations. No different principle applies to those contract provisions, except that a passenger may have considerably more time and opportunity to apprise himself of the time limitation provision than to protect himself against a limitation of liability. *See DeNicola,* 642 F.2d at 11; *Silvestri,* 388 F.2d at 18.

ficiently conspicuous (and perhaps its reference to "pages 2/10" was ambiguous to a person whose native tongue and usage are American English).

2. Its legend following Article 35 was insufficiently brought to the passenger's attention by a notice in a more conspicuous location.

Thus it cannot be said that the notice provided by Costas met the *Silvestri* standard as a matter of law.[4]

### *Conclusion*

Costas' motion for partial summary judgment based on Articles 20 and 21 of the Ticket is denied.

---

4. Although the cases have not addressed the issue in precisely these terms, under the circumstances here it seems particularly appropriate to pose the question of adequacy of notice—of "reasonable communicativeness"—to a jury. After all the issue is whether the Ticket put the reasonable person, the average passenger, on notice of the liability limitation. Other reasonable people, the average jury, are singularly well suited to make that judgment (unencumbered by the fictions with which we lawyers are accustomed to dealing).