**Laura O'CONNELL, Plaintiff,**

v.

**NORWEGIAN CARIBBEAN LINES, INC., et al., Defendants.**

No. 84 C 11010.

United States District Court, N.D. Illinois, E.D.

April 15, 1986.

John C. Ambrose, Ambrose and Cushing, P.C., Chicago, Ill., for plaintiff.

Theodore C. Robinson, Harold L. Witsaman, John P. Maniatis, Ray, Robinson, Hanninen & Carle, Chicago, Ill., for defendants.

---

## MEMORANDUM OPINION

GRADY, Chief Judge.

This action is before us on the motion of defendant Klosters Rederi A/S d/b/a Norwegian Caribbean Lines ("Norwegian") for summary judgment. At issue is the enforceability of a condition in Norwegian's ocean cruise ticket limiting the time a passenger can bring an action for personal injury against the carrier. For the reasons given below, Norwegian's motion is denied, and partial summary judgment is granted for plaintiff.

## FACTS

Plaintiff Laura O'Connell ("O'Connell") and her mother were passengers on a cruise on Norwegian's vessel, the M/S Skyward. On January 3, 1983, O'Connell was injured when the ship pitched while she was stepping into her cabin bathroom, and she was caused to hit her right knee against a metal strip lining the bathroom's entrance.

On December 31, 1984, more than one but less than two years after the time of the alleged injury, O'Connell filed this negligence suit. Norwegian then filed this motion for summary judgment on the grounds that O'Connell failed to give written notice of her personal injury claim within six months from the day her injury occurred and failed to institute suit within one year of her injury as required by paragraph thirteen of the Contract of Passage.

## DISCUSSION

Section 183b(a) of Title 46 of the United States Code allows owners, operators, and agents of sea-going vessels to limit their liability for personal injury claims to suits in which notice has been given to the carrier within six months of the injury and where the suit has been commenced within one year. 46 U.S.C. § 183b(a). *See Barbachym v. Costa Line, Inc.,* 713 F.2d 216, 218–19 (6th Cir.1983). However, "[s]ince the statute clearly works to the carrier's benefit while restricting the time available for passengers to seek legal recourse, courts have been hesitant to honor the shortened period of limitations per-

848

mitted by § 183b(a) unless the carrier has made a 'reasonable' effort to warn passengers of the notice and filing requirements." *Barbachym*, 713 F.2d at 219. *See also Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir.1968); *Cada v. Costa Line, Inc.*, 547 F.Supp. 85 (N.D.Ill.1982); *Raskin v. Compania de Vapores Realma S.P.*, 521 F.Supp. 337 (S.D.N.Y.1981).[1] If "the steamship line has done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights," *Silvestri*, 388 F.2d at 17, and if these provisions are not unlawful in content, they will be binding regardless of whether they were read by the passenger. *Id. See also Miller v. Lykes Bros. S.S. Co., Inc.*, 467 F.2d 464, 466 (5th Cir. 1972). Whether such "constructive" notice exists is a question of law for the court to decide. *Barbachym*, 713 F.2d at 218; *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 11 (5th Cir.1981).[2]

█ The usual way ocean carriers attempt to provide notice of limitations provisions is by including a statement on the ticket which refers the passenger to the actual limitations provisions printed elsewhere in the ticket "packet." Generally, the courts have held that in order for such statements to constitute constructive notice, they must (1) contain conspicuous language; (2) apprise the passengers that the contractual periods of limitation exists; and (3) inform the passengers of the importance of those limitations. *Barbachym*,

713 F.2d at 219-20; *DeNicola*, 642 F.2d at 11; *Silvestri*, 388 F.2d at 17-18; *Cada*, 547 F.Supp. at 87-88. Furthermore, the burden of proof is on the carrier to show that it did all that it reasonably could to warn the passengers of its limited liability. *Barbachym*, 713 F.2d at 219; *Silvestri*, 388 F.2d at 17. Thus, if the carrier fails to meet any one of these requirements, summary judgment must be denied.

The "Passenger Contract" at issue in this case consists of a five page ticket packet. The first page of the packet bears the words "PASSENGER CONTRACT" in the upper right hand corner and is designated "AGENT'S COPY NOT GOOD FOR PASSAGE."[3] The second page is a decorated cover page. The third page also bears the words "PASSENGER CONTRACT" and is designated "PASSENGER TICKET TO BE PRESENTED FOR PASSAGE." The fourth page is identical to the Agent's Copy and the Passenger Ticket, except it is designated "PASSENGER COPY NOT GOOD FOR PASSAGE," and bears the additional statement in the lower left hand corner: "THE PROVISIONS ON THE REVERSE HEREOF ARE INCORPORATED AS THOUGH FULLY REWRITTEN." On the back of the fourth page appears the statement: "Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of this Passenger Contract Ticket by Passenger shall constitute the agreement of the Passenger to these Terms and Conditions." This is fol-

1. Even prior to the enactment of § 183b(a), the Supreme Court held that a carrier must make a reasonable effort to advise passengers of the terms of the carriage contract. The Court stated that " 'when a company desires to impose special and more stringent terms upon its customers, in exoneration of its own liability, there is nothing unreasonable in requiring that those terms shall be distinctly declared and deliberately accepted.' " *The Majestic*, 166 U.S. 375, 386, 17 S.Ct. 597, 602, 41 L.Ed. 1039 (1897) (quoting Henderson v. Stevenson, L.R. 2 H.L.Sc. 470). The case law has developed in such a way that the terms no longer need be "deliberately accepted." *See DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 9-10 & n. 9 (5th Cir.1981). *But cf. Barbachym*, 713 F.2d at 220 (where space for signature provided, lack of signature a factor).

The requirement that they be "distinctly declared," however, is still strictly enforced. *See DeNicola*, 642 F.2d at 9-10.

2. Judge Milton I. Shadur has suggested, however, that if a court finds that the notice does not meet the "reasonableness" standards *as a matter of law* requiring summary judgment, the issue of constructive notice may in some cases still be submitted to a jury. *Cada*, 547 F.Supp. at 86-88 and n. 4.

3. The Agent's Copy is usually removed by a travel agent, but was not in this case because O'Connell bought her ticket from a cruise ticket wholesaler.

lowed by the words "Contract of Passage" and twenty-seven numbered paragraphs of terms and conditions in small, but legible type. The twenty-seven paragraphs occupy the back side of the fourth page and both sides of the fifth page.

Paragraph thirteen contains the terms of limitation at issue. In pertinent part it states, "[I]n no event shall any suit for any cause against the carrier with respect to ... personal injury ... be maintainable, unless suit shall be commenced within one (1) year from the day when the ... personal injury ... of the passenger occurred, notwithstanding any provision of any state or country to the contrary." [4]

■ O'Connell first contends that defendant's motion for summary judgment should be denied because Norwegian has not produced the passenger copy of the ticket, the only page of the passenger contract which includes the statement incorporating the suit time limitation. In support of this contention, O'Connell filed a photocopy of the remainder of the ticket packet in her possession, which does not include the passenger copy page, and her affidavit, denying that she ever received that page.

Norwegian, however, has submitted O'Connell's deposition, in which she admitted that she received the passenger copy of the ticket. The Court of Appeals for the Seventh Circuit has stated:

> Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions. An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth newly discovered evidence.

*Miller v. A.H. Robbins Co., Inc.,* 766 F.2d 1102, 1104 (7th Cir.1985).

O'Connell does not allege, nor does the deposition transcript provided to the court suggest, that O'Connell was confused by the questions regarding the passenger copy of the ticket. O'Connell does not set forth any newly discovered evidence or offer a reason for the direct contradiction of her prior testimony. We therefore find that there is no genuine issue of fact as to whether O'Connell received the copy of the passenger contract ticket containing the incorporation statement, and we grant partial summary judgment to Norwegian to the effect that she did receive it. Accordingly, the only question remaining for determination on the issue of constructive notice is whether the contractual limitation on the time for filing suit was reasonably communicated to the plaintiff, requiring total summary judgment for Norwegian. For the reasons stated below, we hold that it was not.

**Conspicuousness**

■ The courts have held that for limitation provisions to be considered reasonably communicated, the face of the ticket must contain conspicuous language directing the passenger's attention to the contractual terms contained in other parts of the ticket. *Barbachym,* 713 F.2d at 219; *DeNicola,* 642 F.2d at 10; *Carpenter v. Klosters Rederi,* 604 F.2d 11, 13 (5th Cir.1979); *Silvestri,* 388 F.2d at 17. Norwegian claims that the incorporation statement on the face of the passenger copy of the ticket is sufficiently conspicuous to require summary judgment. It relies on the fact that the statement is in large print, red ink, capital letters, and bold print. It also contends that the Fifth Circuit's opinion in *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir.1979), is persuasive authority that the incorporation statement is sufficiently conspicuous. In fact, *Carpenter* is the sole legal authority defendant cites to support its claim that its statement is conspicuous.[5] Norwegian adds, however, that after *Car-*

---

**4.** Paragraph thirteen also states: "No suit shall be maintained against the carrier for ... personal injury ... unless written notice of the claim with full particulars be delivered to the carrier or its agent at its offices at the port of

sailing or the port of termination within six (6) months from the day when such ... personal injury ... occurred."

**5.** Subsequent to the filing of the briefs on this motion, Norwegian directed our attention to

*penter* it "enlarged the print size of its passenger contract tickets to match or exceed the print size of the ticket" considered in *Carpenter.*[6]

We have compared Norwegian's current ticket, the one at issue in this case, with the ticket analyzed in *Carpenter.* See Appendixes A and B.[7] While we find Norwegian's claim to be technically correct, we also find it somewhat misleading. After Norwegian's victory in *Carpenter,* it increased the print size of virtually all the lettering on the face of its ticket, *except the incorporation statement.* The company's name is larger. Its address is larger. The words "Voyage No.," "Cabin No.," and "Fare" are all larger. The print size of the incorporation statement, however, has remained exactly the same, and as a result it is now the smallest print on the entire page. Furthermore, the statement no longer appears at the top of the page directly beneath the words PASSAGE CONTRACT TICKET, but instead is now in the bottom left hand corner. Finally, it has been made to appear smaller by the way the words have been spaced.

Defendant notes that the incorporation statement is in capital letters and emphasizes that it is now printed entirely in red. Conspicuousness, however, is not to be judged solely by talismanic use of red ink, bold print, and capital letters, but rather by the relationship of the warning to the color, size, and type of the print surrounding it. *See Silvestri,* 388 F.2d at 14 (facial warning squeezed between two bold faced captions). Capital letters in bold red ink are not at all "eye-catching" when surrounded by larger capital letters in bolder red ink.

*See id.* at 18. Here, although the printing is indeed in capital letters and red ink, when it is considered in the context of the entire page, it cannot be considered "eye-catching," *id.,* "prominent," *Cada,* 547 F.Supp. at 87, or "inescapably obvious," *Hahn v. Norwegian American Line,* 1973 A.M.C. 794, 799 (N.D.Ill.1971), *aff'd,* 1973 A.M.C. 803 (7th Cir.1972). To the contrary, the presence of other, larger, bolder, red lettering on the same line tends to "artfully camoflauge" the incorporation statement. *Cf. Hahn,* 1973 A.M.C. at 799.

Furthermore, this incorporation statement appears only on the passenger copy of the ticket marked NOT GOOD FOR PASSAGE. The actual passenger ticket to be presented for passage does not include the incorporation statement. The space corresponding to where it appears on the passenger copy is simply left blank on the actual ticket.

The cases clearly require that the incorporation statement be on "the face of the ticket," *Carpenter,* 604 F.2d at 13, or on "the ticket cover." *DeNicola,* 642 F.2d at 10. *See also Barbachym,* 713 F.2d at 219 (and cases cited therein); *Raskin,* 521 F.Supp. at 341. The reason for the rule is clear: the face of the ticket is the first and often the last place a passenger looks for contract information. Thus, here, because all the information that would appear necessary to a passenger is on the actual passenger ticket, the passenger might naturally conclude that there is no reason to look further to the face of the passenger copy, which, except for the incorporation statement, is identical to the face of the passenger ticket. This argument is sup-

Shannon v. Norwegian Caribbean Lines, 640 F.Supp. 373 (M.D.Pa.1985). We have considered Shannon, as well as Strauss v. Norwegian Caribbean Lines, 613 F.Supp. 5 (E.D.Pa.1984), both of which granted summary judgment for Norwegian based on this same contract ticket. For the reasons indicated infra, we find those two opinions unpersuasive.

6. Norwegian also emphasizes in its brief that in order to comply with Carpenter, it moved the terms and conditions from the ticket folder to the back of the ticket itself. This change, however, is irrelevant to the point of the court's

holding in Carpenter and to the issue before this court. The point the court made in Carpenter was that conditions printed in any location other than the face of the ticket are only binding "if sufficient reference to such conditions is made on the face of the ticket." Carpenter, 604 F.2d at 13. Clearly, if it was important that the terms be on the back of the ticket and not the ticket folder, Norwegian would not have received summary judgment in Carpenter.

7. Norwegian attached copies of these tickets as exhibits to its briefs.

ported by the plaintiff's own testimony, which has been presented to the court by the defendant. In her deposition, plaintiff stated that she noticed the ticket and the copy, but she further stated that "the copy was identical," apparently failing to detect that the copy, unlike the actual ticket, contained an incorporation statement. We can think of no good reason for leaving the incorporation statement off the actual ticket and leaving the space empty. In any event, it cannot be said "that the steamship line has done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting [her] legal rights." *See Silvestri*, 388 F.2d at 17.

■ We therefore hold as a matter of law that the incorporation statement is not sufficiently conspicuous on the face of the ticket to be considered "reasonably" conspicuous, and we enter partial summary judgment in favor of plaintiff to that effect.[8] To hold otherwise would be to read the conspicuousness requirement out of the rule and require simply the presence of an incorporation statement anywhere within the ticket packet.

**Language of Importance**

■ Even if Norwegian's incorporation statement was sufficiently conspicuous, there is nothing in it "to warn the passenger that the terms and conditions were important matters of contract affecting [her] legal rights." *Silvestri*, 388 F.2d at 17. *Silvestri* has been universally interpreted to require "a carrier to apprise the passenger of *both the existence and importance* of contractual periods of limita-

tion in order to find the restrictions enforceable." *Raskin*, 521 F.Supp. at 340 (emphasis added). *See also DeNicola*, 642 F.2d at 11 (conditions binding "because the defendant had done all it reasonably could to warn of both their existence and their importance"); *Miller*, 467 F.2d at 466 (interpreted *Silvestri* to hold that restrictions are binding "only if the carrier warns the passenger of their importance as well as their existence"); *Cada*, 547 F.Supp. at 86–87; *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462 at 464–65 (1974).[9]

How far the warning in Norwegian's ticket falls below what can reasonably be expected is shown by contrasting it with warnings used by other steamship companies in cases where summary judgment was granted.

In *Baron v. Compagnie Generale Transatlantique*, 108 F.2d 21, 22 (2d Cir.1939), the front page of the ticket included the warning,

> Passengers should read the terms of the contract of carriage stated below and overpage, their particular attention being called to the limitations on liability therein contained.

In *Gardner v. Greek Line*, 388 F.Supp. 856, 857 (M.D.Penn.1975), on the first page of the ticket, in a separate box, in bold print were the words:

> IMPORTANT NOTICE
> *Please Read Before Accepting*
> Passengers should read the terms and conditions of the passage contract ... which form an integral part of the contract between them and the carrier. The

---

8. We may enter summary judgment for the non-moving party even in the absence of a cross-motion, provided we find that there are no material issues of fact and the non-moving party is entitled to judgment as a matter of law. *LaSalle National Bank v. Federal Emergency Management Agency*, No. 84 C 9066, Memorandum op. at 4 n. 2 (N.D.Ill. Jan. 3, 1986) (Grady, J.) [Available on WESTLAW, DCTU database]; *Dyer v. Blair*, 390 F.Supp. 1291, 1309 n. 46 (N.D.Ill.1975); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 2720, at 28–34 (1983).

9. Although the Seventh Circuit has not spoken on this subject, Judge Will applied the *Silvestri* rule with apparent approval by the Seventh Circuit in *Hahn v. Norwegian American Line*, 1973 A.M.C. 794, 799 (N.D.Ill.1971), *aff'd on the opinion below*, 1973 A.M.C. 803 (7th Cir.1972).

The *Silvestri* "language of importance" requirement was quoted by the courts in both *Shannon*, 640 F.Supp. at 374, and *Strauss*, 613 F.Supp. at 7. Neither court, however, considered whether the statement at issue here meets the language of importance requirement.

passenger in accepting this ticket agrees to be bound by the terms and conditions thereof and his attention is particularly drawn to the exemptions and limitations of liability of the carrier stated therein.

In *Lipton v. National Hellenic American Lines*, 294 F.Supp. 308, 309 (E.D.N.Y. 1968), the following warning appeared beneath the heading "Passenger Contract Ticket":

> IMPORTANT NOTICE. Each passenger should carefully examine this ticket, particularly the conditions on pages 2, 3, 4, and 5.

Finally, in *Hahn v. Norwegian American Line*, the following all-capitals statement was printed in red ink on the cover of the ticket:

> IMPORTANT NOTICE: THE ATTENTION OF PASSENGERS IS ESPECIALLY DIRECTED TO THE TERMS AND CONDITIONS OF THE "CONTRACT OF CARRIAGE" AND IT IS MUTUALLY AGREED THAT THE CONTRACT TICKET IS ISSUED BY THE COMPANY AND ACCEPTED BY THE PASSENGER SUBJECT TO THE TERMS AND CONDITIONS SET FORTH. A COPY OF THE "CONTRACT OF CARRIAGE" APPEARS ON THE REVERSE SIDE OF THIS PAGE

AND CONTINUED [sic] ON THE INSIDE COVER OF THIS TICKET.

*See Cada,* 547 F.Supp. at 87 (quoting from the appendix in *Hahn*).

Here, just as in *Silvestri,* "[n]othing whatever was done to impress the importance of the terms and conditions upon the passenger." *Silvestri,* 388 F.2d at 17. *See also Raskin,* 521 F.Supp. at 342. There is no language on the cover or the face of the ticket that explicitly calls attention to the terms and conditions of the contract, or to their importance, or to the fact that the passenger is bound by them. There is nothing to indicate that the "provisions" on the reverse side are indeed terms and conditions that limit the passenger's legal rights. There is no language such as IMPORTANT NOTICE or WARNING. Finally, as we have already held, the statement is not conspicuous, which also bears on whether the defendant has done "all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting [the passenger's] legal rights." [10]

We therefore hold that Norwegian has failed to include sufficient language of importance in its incorporation statement to obtain summary judgment.[11] We do not

---

**10.** Norwegian contends that passengers generally do not read the contracts regardless of where the warning is located or how it is phrased. We agree, as has at least one other court.

> To be sure, it can be said that all this is legalism, since [the passenger] should have known the [carrier] had not gone to the trouble of printing the Terms and Conditions for the fun of it and would not have read them no matter what was said; and we confess some doubt how far the intensity of ticket reading correlates with the strength of the invitation to indulge in it.

*Silvestri,* 388 F.2d at 18.

Ultimately, however, we have little sympathy for this argument. Norwegian is attempting to limit the rights of the plaintiff, and it must do so in a manner reasonably calculated to inform the plaintiff of those limitations and their importance. It cannot control what plaintiff does, but it can control what it does. If it provides adequate notice, it has done all it can be expected to do. Any one of the warnings cited in this opinion that have entitled defendants to summary judgment would be sufficient, regardless of

whether passengers choose to read the contract. *See Carpenter,* 604 F.2d at 13.

**11.** O'Connell also contends that Norwegian's incorporation statement does not contain the "clarity of notice" required for summary judgment. Norwegian responds that the *Carpenter* case is "persuasive authority" for finding the statement sufficiently clear. At the time of the *Carpenter* case, Norwegian's incorporation statement read: "Issued subject to the terms and conditions printed on the cover of this contract ticket which form part thereof." The court of appeals held that this statement provided adequate notice to the passenger of the suit time limitation. *Carpenter,* 604 F.2d at 13.

Shortly after *Carpenter,* however, Norwegian changed its incorporation statement to: "The provisions on the reverse hereof are incorporated as though fully rewritten." O'Connell contends that "it appears that this statement is purposefully written in a muddled and ambiguous way...." However that may be, all of the cases cited in this opinion feature significantly clearer notice than is present in Norwegian's current

believe this is a case where a jury could reasonably reach a different result. *Cf. Cada,* 547 F.Supp. at 88 n. 4; *see supra* note 2. Accordingly, we grant partial summary judgment to O'Connell on the issue of whether Norwegian provided constructive notice of the suit time limitation.[12]

CONCLUSION

For the reasons stated, we grant partial summary judgment for O'Connell and hold that Norwegian did not provide constructive notice of the suit time limitation. We

grant partial summary judgment for Norwegian to the effect that O'Connell did receive the passenger copy of the ticket containing the incorporation statement. Therefore, if Norwegian wishes to rely on the suit time limitation at trial, the only question will be whether O'Connell actually read the limitation on the back of the fourth page of the ticket or in any other way received actual notice of its terms. *See* Fed.R.Civ.P. 56(d); *Silvestri,* 388 F.2d at 18.

---

statement. They all make clear that the ticket is issued subject to conditions and that those conditions are part of the parties' contract. They specifically direct the passenger to the conditions. We have some doubt whether Norwegian's current statement, particularly the phrase "incorporated as though fully rewritten," meets the standard for "reasonable" clarity of notice.

However, because we have held that the statement does not meet the conspicuousness and language of importance requirements, *see supra* pp. 849–55, we need not decide this question.

**12.** See *supra* note 8.

APPENDIX A

The "O'Connell"Ticket

APPENDIX B

The "Carpenter" Ticket