521 So.2d 316 (1988)
Elizabeth HIRSCH, Appellant,
v.
KLOSTERS REDERI A/S, d/b/a Norwegian Caribbean Lines, Appellee.
No. 87-2175.
District Court of Appeal of Florida, Third District.
March 8, 1988.
Rehearing Denied April 20, 1988.
Urich & Shenkman, P.A., and Stephen C. Shenkman, for appellant.
Patton & Kanner and Michael F. Guilford, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
JORGENSON, Judge.
Elizabeth Hirsch sustained injuries when she slipped and fell while descending a stairway on the M/S Sunward II, a Norwegian Caribbean Lines [Norwegian] cruise ship on which she was a passenger. More than one year after the date of her accident, she brought a negligence action against the steamship line. The contract of passage provided for a one-year period of limitations.[1] The trial court granted Norwegian's *317 motion for summary judgment on the ground that the one-year limitations period barred Hirsch's action. Because we conclude that the one-year contractual limitation on the time for filing suit was not reasonably communicated to Hirsch, we reverse.
Hirsch contends, and we agree, that the passenger ticket failed to alert her "to the menace of its fine-print terms," Lipton v. National Hellenic American Lines, 294 F. Supp. 308, 309 (E.D.N.Y. 1968). Hirsch also claims that the ticket failed to communicate to her the importance of its terms and conditions under the standard of Silvestri v. Italia Societa Per Azioni Di Navigazione, 388 F.2d 11 (2d Cir.1968). Silvestri establishes that if "the steamship line has done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights," 388 F.2d at 17, then the limitations will be deemed incorporated and enforceable against the passenger. This court approved the Silvestri standard in Hallman v. Carnival Cruise Lines, 459 So.2d 378 (Fla. 3d DCA 1984).
The passenger contract in this case is made up as a six-page ticket booklet. Page one bears the phrase "PASSENGER CONTRACT" in the upper right corner and, in the lower right corner, is designated "AGENT'S COPY NOT GOOD FOR PASSAGE." Page two is a decorative cover page. Page three duplicates the phrase "PASSENGER CONTRACT" and is designated "PASSENGER TICKET  TO BE PRESENTED FOR PASSAGE." With two exceptions, page four is the same as the agent's copy and the passenger ticket. The page is designated "PASSENGER COPY NOT GOOD FOR PASSAGE" and bears the following incorporation statement in the lower left hand corner: "THE PROVISIONS ON THE REVERSE HEREOF ARE INCORPORATED AS THOUGH FULLY REWRITTEN." Embedded on the back of page four and continuing on both sides of page five are twenty-seven numbered paragraphs detailing in diminutive type the terms and conditions of the contract. Located on the back of page four is the statement: "Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of this Passenger Contract Ticket by Passenger shall constitute the agreement of Passenger to these Terms and Conditions." Page six duplicates the agent's copy, passenger ticket, and passenger copy, except for the designation "ACCOUNTING COPY NOT GOOD FOR PASSAGE." Along the bottom edge of four of the six pages appear the words "REGISTERED IN NORWAY" and the respective copy designation, all printed in red ink in upper case. The incorporation statement is also printed in red ink, in a substantially smaller type size, and it appears only on page four, in the lower left corner.
In O'Connell v. Norwegian Caribbean Lines, 639 F. Supp. 846 (N.D.Ill. 1986), the court analyzed and found deficient a Norwegian ticket indistinguishable from that issued to Hirsch.[2] We agree with the Illinois district court that "[h]ow far the warning in Norwegian's ticket falls below what can reasonably be expected is shown by contrasting it with warnings used by other steamship companies in cases where summary *318 judgment was granted." Id. at 851; Silvestri, 388 F.2d at 17. In Hallman we examined the clarity of notice and conspicuousness exhibited in a Carnival Cruise Lines passenger ticket. We found the ticket to be "virtually indistinguishable" from tickets approved as bearing adequate warnings in DeNicola v. Cunard Line, 642 F.2d 5 (1st Cir.1981); McQuillan v. "Italia" Societa Per Azione Di Navigazione, 386 F. Supp. 462 (S.D.N.Y. 1974); and Lipton v. National Hellenic American Lines, 294 F. Supp. 308 (E.D.N.Y. 1968). In every instance, the passenger contract met the Silvestri standard, and summary judgment for the steamship line was properly granted.
The cover page of the passenger ticket in Hallman bears an incorporation statement identical to that in this case. However, the Hallman ticket contains additional warnings on the cover page. In the lower left corner of the cover page there appears in upper case type, "SUBJECT TO CONDITIONS OF CONTRACT ON LAST PAGES." Just below that warning, also in upper case type, is the caveat "IMPORTANT: PLEASE READ CONTRACT ON LAST PAGES 1, 2, 3."
The steamship ticket in Lipton is an oblong booklet, bound at the left edge. The cover of the packet is clearly labeled, in large type, "Passage Contract Ticket." In smaller type, but also on the cover page, is the warning, "IMPORTANT NOTICE. Each passenger should carefully examine this ticket, particularly the conditions on pages 2, 3, 4 and 5." The physical arrangement of the passage contract in Lipton is similar to the ticket at issue in McQuillan. On the cover of the oblong booklet containing the passage contract appears the Italian line's logo. Superimposed over the logo are the words "passage contract." Just underneath the logo, in white lettering on a blue background and in clearly legible type, appears the following instruction: "Terms of Passage Contract. Passengers are kindly requested to read the conditions of this contract before accepting."
The steamship ticket in DeNicola consists of an eighteen-page booklet bound at the left edge. The ticket cover is labeled in bold print "Passage contract ticket." At the bottom of the cover page appears the following language: "Terms and conditions of contract. Notice. The attention of passengers is especially directed to the terms and conditions of this contract appearing within and it is mutually agreed that this contract ticket is issued by Cunard Line Limited and accepted by the passenger subject to such terms and conditions." Pages two through five contain the contract terms. The terms are prefaced by the phrase, "Terms and Conditions of Contract Incorporated into and Forming part of Passage Contract Ticket." The next five booklet pages contain reservation and embarkation information, followed by a "Revenue Coupon" and six carbon copies. Each of the coupon copies bears a different heading and contains the passenger's name, pertinent travel information, and fare. Only the coupon denominated "Sailing Coupon" is good for passage; however, each of the coupon copies bears the following warning in upper case letters: "Issued subject to the terms and conditions printed on the inside of the cover and succeeding pages of this contract ticket which form part thereof." The trial court in DeNicola concluded, and the second circuit agreed, that the notice and warning given first on the booklet cover, then at the head of page two, and finally on each of the seven coupons that comprised the back section of the booklet provided sufficient notice to bind the passenger to the contract's one-year limitation for filing suit.
By contrast, the Norwegian ticket here contains an inconspicuous incorporation statement and no warning language. The incorporation statement is printed in the smallest, thinnest type size on the entire page. While it is true that the letters are in red, in upper case, "the presence of other, larger, bolder, red lettering on the same line tends to `artfully camoflauge [sic]' the incorporation statement." O'Connell, 639 F. Supp. at 850. The incorporation statement appears only on the passenger *319 copy (page four).[3] The space for the statement is, inexplicably, left blank on the face of the actual passenger ticket to be presented for passage, even though "the face of the ticket is the first and often the last place a passenger looks for contract information." Id. It will not suffice to sandwich an incorporation statement anywhere within the ticket packet; rather, the steamship line must provide conspicuous facial notice. In contravention of the Silvestri standard, "[n]othing whatever was done to impress the importance of the terms and conditions upon the passenger." Silvestri, 388 F.2d at 17. There is nothing on the cover of Norwegian's ticket packet or on the face of the ticket itself to draw attention to the contract's terms, their importance, or the fact that they bind the passenger. Nothing on the face of the passenger's copy indicates that the "provisions" on the reverse side are binding, contractual terms that limit a passenger's rights under law. No language, such as "WARNING" or "IMPORTANT NOTICE" appears either on the cover of or within the ticket packet. O'Connell, 639 F. Supp. at 852; Hallman; Lipton; DeNicola.
We are mindful that passengers may not read the terms of their passage contracts no matter how conspicuous the notice and vivid the warnings. Like Judge Friendly, "we confess some doubt how far the intensity of ticket reading by steamship passengers correlates with the strength of the invitation to indulge in it." Silvestri, 388 F.2d at 18. Where a steamship line desires to limit the rights of its passengers, however, it must provide adequate notice of the terms and conditions of its passage contract. Further, "it must do so in a manner reasonably calculated to inform the plaintiff of those limitations and their importance." O'Connell, 639 F. Supp. at 852 n. 10.
Because Norwegian did not conform to the Silvestri requirements adopted by this court in Hallman, Hirsch cannot be bound by the one-year limitations period. We reverse the summary judgment entered in favor of Norwegian and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] The contract of passage reads, in pertinent part, as follows:

(13) No suit shall be maintained against the carrier for delay, detention, personal injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the carrier or its agent at its office at the port of sailing or at the port of termination within six (6) months from the day when such delay, detention, personal injury, illness or death of the passenger occurred; and in no event shall any suit for any cause against the carrier with respect to delay, detention, personal injury, illness or death be maintainable, unless suit shall be commenced within one (1) year from the day when the delay, detention, personal injury, illness or death of the passenger occurred, notwithstanding any provision of law of any state or country to the contrary.
[2] Norwegian urges us to adopt the holdings of Strauss v. Norwegian Caribbean Lines, 613 F. Supp. 5 (E.D.Pa. 1984), and Shannon v. Norwegian Caribbean Lines, 640 F. Supp. 373 (M.D.Pa. 1985), both of which granted summary judgment in Norwegian's favor on the "exact ticket" as the one now before us. We are not persuaded by the reasoning in either case, and we find far more compelling the analysis of Chief Judge Grady in O'Connell v. Norwegian Caribbean Lines, 639 F. Supp. 846 (N.D.Ill. 1986).
[3] It has been observed that "[t]he chief function of type is to get itself read." R. Polk, The Practice of Printing 191 (7th ed. 1971). The smallest common type size is 6-point, a size "far too small for ordinary reading matter, for it causes undue eye strain to make out the letter forms." Id. at 68,194. Norwegian's incorporation statement is printed in 6-point type. Norwegian also has elected to have the statement printed in all capital letters. Capitals are not as legible as lower-case letters. This is so because

[m]ost of our reading is done by the perception of "word forms" rather than by a putting together of the separate letters of the word. The general shape and appearance of the word enables us to recognize it even when it is so far away that the separate letters cannot be seen at all. For this reason, the lower-case letters are much more legible than capital letters. Capitals do not permit of reading by word form, since all words made up of capitals have the same rectangular shape, differing only in length.
Id. at 192 n. 1. These principles of legibility are not arcane. A. Turnbull, The Graphics of Communication 182 (2d ed. 1968). Selection of type size and style should support, not thwart, the legibility of printed matter, especially when the printed material seeks to restrict a passenger's legal rights.